Carol J. GRAVES et al., Appellants,

v.

GEORGE DULLNIG & CO. et al., Appellees.

No. 4973.

Court of Civil Appeals of Texas, Eastland.

March 17, 1977.

Rehearing Denied March 17, 1977.

Second Motion for Rehearing Denied April 14, 1977.

Gary A. Beahm, San Antonio, for appellants.

G. Thomas Coghlan, Stephen E. Walraven, Charles R. Shaddox, San Antonio, for appellees.

## ON MOTION FOR REHEARING

WALTER, Justice.

Our opinion and judgment rendered on February 3, 1977, are set aside.

In the appellees' motion for rehearing, they assert the deposition of Randolph Coleman has never been signed, has never been filed, was not relied on in the court below, and is not part of the record in this case.

In George Dullnig & Company and Randolph Coleman's motion for summary judgment, they assert:

"In support of this motion, defendants rely on the pleadings on file in the Court, depositions and affidavits which shall be timely filed prior to the hearing date of the motion."

In Rauscher, Pierce Securities Corporation's motion for summary judgment, it asserts:

"This Motion is based upon the pleadings herein, and the depositions of Defendant Randolph Coleman and Plaintiff Carroll F. Graves, Jr., taken and filed herein, all of which show as a matter of law there is no genuine issue as to any material fact herein and that the Defendant Rauscher, Pierce Securities Corporation is entitled to summary judgment against the Plaintiffs herein."

The order granting summary judgment recites:

". . . the Court having considered Defendants' Motions together with the pleadings, depositions and Affidavits on file herein as well as the argument of counsel, is of the opinion and so finds that there is no genuine issue of any material facts, and that Defendants, and each of them are entitled to judgment as a matter of law."

The order granting summary judgment was signed and entered on January 12, 1976. Prior to that time, the appellee, Rauscher, Pierce Securities Corporation, filed a memorandum brief in support of its motion for summary judgment which appears in the transcript and appears to have been filed as of December 17, 1975 by the clerk of the district court. In this appellee's memorandum brief, it refers to the deposition of Carroll F. Graves, Jr. and the deposition of Randolph Coleman.

On March 2, 1976, the court entered the following order:

"The court being of the opinion that the following specified original exhibits admitted in evidence at the trial of the above entitled and numbered cause should be inspected by and sent to the Court of Civil Appeals for the Fourth Supreme Judicial District of Texas, at San Antonio, Texas, in lieu of copies thereof: Exhibit _____ Oral Deposition of Carroll F. Graves, Jr., and Exhibit _____ Oral Deposition of Randolph Coleman."

It would appear from these instruments the court considered the depositions.

The original unsigned deposition of Carroll F. Graves and a copy of the unsigned deposition of Randolph Coleman appear in this record. Neither of them bear the file mark of either the District Clerk or the Clerk of the Court of Civil Appeals. There appears a notation on each of them: "Received 1–10–77, Glenda Terrell, Deputy, 11th Dist., Court of Civil Appeals."

The appellants in their brief refer to the deposition of Graves and Coleman. The appellees in their brief refer to the deposition of Mr. Graves.

Appellees, George Dullnig and Company and Randolph Coleman, in their brief assert:

"The only evidence offered to support the motion for summary judgment was the deposition of the plaintiff, Carroll F. Graves."

Appellee, Rauscher, Pierce Securities Corporation, in its brief says:

"The facts relevant to this appeal are undisputed, and are established through the deposition testimony of the appellant Carroll F. Graves, Jr."

■ Since the depositions were not signed and filed in the trial court, we have no summary judgment proof to support the judgment.

On the other hand, if we consider the depositions a part of the record, we find the appellees have failed to discharge their bur-

den of showing they were entitled to a summary judgment.

Defendants' motions for summary judgment assert they were given complete written discretion to handle the stock which was never revoked and that the Graves still own the stock and are unable to demonstrate any injury arising from defendants' failure to sell the stock at any particular time. In support of their motions for summary judgment, defendants rely upon the record and the depositions of defendant, Randolph Coleman, and plaintiff, Carroll F. Graves, Jr.

The Graves executed the following instruments:

"U.S. Defense Liaison Group
APO San Francisco 96356
July 17, 1973

Dear Mr. Coleman,

This letter gives you the authority to fully handle our account. This is to include buying, selling, and trading of stocks.

Sincerely,
s/ Mrs. Carroll F. Graves, Jr.
(Carol Graves)
s/ Carroll F. Graves, Jr."

FULL TRADING AUTHORIZATION
WITH PRIVILEGE TO WITHDRAW
MONEY AND/OR SECURITIES

Gentlemen:

The undersigned hereby authorizes RANDOLPH COLEMAN (whose signature appears below) as his agent and attorney in fact to buy, sell (including short sales) and trade in stocks, bonds and any other securities and/or commodoities and/or contracts relating to the same on margin or otherwise in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon.

You are authorized to follow the instructions of RANDOLPH COLEMAN in

every respect concerning the undersigned's account with you, and make deliveries of securities and payment of moneys to him or as he may order and direct. In all matters and things aforementioned, as well as in all other things necessary or incidental to the furtherance or conduct of the account of the undersigned, the aforesaid agent and attorney in fact is authorized to act for the undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at San Antonio, Texas, but such revocation shall not affect any liability in any way resulting from transactions initiated prior to such revocation. This authorization and indemnity shall inure to the benefit of your present firm and of any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated, 4 Aug. 1973
  Ojakarta Indonesia
  (City)  (State)
  Very truly yours,
  s/ Carroll F. Graves, Jr.

SIGNATURE OF AUTHORIZED AGENT:

Carol J. Graves"

Carroll F. Graves, Jr. first got involved in the stock market in 1967 in Sacramento, California while he was in the Air Force. He was transferred to San Antonio in 1969. He called Mr. Randolph Coleman with Rauscher Pierce and asked him to handle his stock account. His stock was transferred to Rauscher Pierce in September, 1972. Graves was transferred to Ojakarta, Indonesia and departed for that country on or about July 15, 1973.

Coleman visited with Graves at their home before the Graves departed. At this meeting, Graves says he delivered to Coleman written instructions to sell CPI at 14½.

Randolph Coleman's deposition reveals he was asked, "Did he tell you in July before the discretionary instrument was signed, 'sell that stock at fourteen and a half?'" and he answered "No."

Coleman's letter to Graves dated October 1 informed him "CPI just traded 1000 shares @ 13 . . . I am watching it closely—I'm gonna get out if it fades, unless you tell me no!"

Graves replied October 8 and said: "I see that CPI got up to 15 + and agree, get out if it fades. I naturally want to get as much as possible but 15–16 would be good."

Graves wrote to Coleman October 25 and said: "I hope that you sold the CPI when it was up to 15 as it appears to have dropped. As I mentioned previously the 15 mark would get me out of the hole very nicely—please let me know."

Coleman replied:

CPI @ 15½, we still have it, for two reasons: (1) I've felt the little sell off would be over in a day or two & that it would return to 15 or better, & (2) The stock is at the transfer agent being sent here, & cannot be delivered. It seems relatively strong; I'll let you know when we get the stock, & too, when I sell it."

"Carroll, just enjoy yourself as much as you can—we've made a good 'comeback' in CPI & I feel more is to come. We will do as you want though, as soon as the stock is delivered."

Graves answered appellees' motion for summary judgment asserted (1) his 2500 shares of CPI was in the hands of his bro-

ker "for sale" and some had been sold at $3.00 per share; (2) that Coleman was directed to sell the stock and he failed to do so; and (3) that Coleman was negligent in handling his account and this was not contemplated when the blanket trading authorization was executed on August 4, 1973.

The instruments copied above were executed by the Graves before they departed for Indonesia and soon after they arrived in Indonesia. In this summary judgment case, we must presume another written instrument, germane to the same subject matter, was written by Graves and delivered to Coleman directing him to sell CPI at 14½. Coleman denies this written instrument was delivered to him. Graves says it was.

In *Miles v. Martin*, 159 Tex. 336, 321 S.W.2d 62 (Tex.1959), the court said:

"It is well settled that separate instruments executed at the same time, between the same parties, and relating to the same subject matter may be considered together and construed as one contract. *Howards v. Davis*, 6 Tex. 174; 26 C.J.S. Deeds § 91, p. 840; 16 Am.Jur. Deeds 537, § 175. This undoubtedly is sound in principle when the several instruments are truly parts of the same transaction and together form one entire agreement. . . ."

After considering all the written instruments in evidence and considering the written instructions from Graves to Coleman to sell the stocks at 14½, we cannot hold as a matter of law there are no genuine issues of fact as to one or more of the essential elements of the plaintiffs' cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827 (Tex.1970).

In a summary judgment proceeding, all conflicts in the evidence are disregarded and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975).

Coleman was an interested witness and his testimony does no more than raise a fact issue. This rule has some exceptions which are not applicable here.

This opinion is rendered in lieu of our opinion of February 3, 1977.

The judgment is reversed and the cause is remanded.