**Tangie WALTERS, Petitioner,**

v.

**CLEVELAND REGIONAL MEDICAL CENTER, Shirley Kiefer, and Keith Spooner, M.D., Respondents.**

No. 08–0169.

Supreme Court of Texas.

Argued Sept. 9, 2009.

Decided March 12, 2010.

---

48. *Lebohm v. City of Galveston,* 154 Tex. 192, 275 S.W.2d 951, 955 (1955) (on rehearing).

49. *Id.*

50. *S.V. v. R.V.,* 933 S.W.2d 1, 23 (Tex.1996).

Christopher Bradshaw–Hull, Houston, TX, for Petitioner.

James Wilson Key Wilde, Dameron, Burgin, Parker & Jackson, Richard Sheehy, M. Randall Jones, Sheehy Serpe & Ware, P.C., Houston, TX, for Respondent, Cleveland Regional Medical Center.

Robert G. Smith, Michael W. Blaise, Lorance & Thompson, P.C., Houston, TX, R. Brent Cooper, Diana L. Faust, Devon J. Singh, Matthew C. Kawalek, Cooper & Scully, P.C., Dallas, TX, for Respondent, Keith Spooner, M.D.

Justice WILLETT delivered the opinion of the Court.

This is one of two "surgical sponge" cases decided today regarding the time limits placed on medical-malpractice suits.[1] The issue here: did Tangie Walters raise a fact issue as to whether she could avail herself of the Open Courts provision[2] as

---

1. The companion case, an Open Courts challenge to the ten-year statute of repose, is *Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283 (Tex.2010).

2. Tex. Const. art. I, § 13.

an exception to the two-year statute of limitations? [3] We answer the same way we did twenty-five years ago with regard to the claimant in *Neagle v. Nelson*: yes.[4] The Texas Constitution grants foreign-object claimants a reasonable opportunity to discover their injuries and file suit,[5] even if the two-year limitations period has run (though not, as in today's companion case,[6] if the ten-year *repose* period has run). And here, Walters has raised a fact issue as to whether the Open Courts provision applies.

Sponge cases constitute a unique class of malpractice claims, thus meriting unique Open Courts treatment: (1) such injuries are notoriously hard to discover; (2) the existence of wrongdoing (and the identity of the wrongdoer) are usually undisputed; and (3) an absolute two-year cutoff would render superfluous the Legislature's ten-year statute of repose.

Today's result is consistent not only with *Neagle*, which held that the Open Courts provision barred application of a two-year statute of limitations in a sponge case, but also with the later-enacted repose statute, which declares ten years as the last-chance deadline for *all* malpractice cases, including, we hold today, foreign-object cases.[7] This outer-boundary deadline would be surplusage if the limitations statute were itself a no-exceptions cutoff.

Accordingly, we reverse the court of appeals' judgment and return this case to the trial court for further proceedings.

## I. Background

In December 1995, Dr. Keith Spooner performed a tubal ligation on Tangie Walters immediately following the birth of a child. Dr. Spooner performed the procedure at Cleveland Regional Medical Center with the help of Shirley Kiefer, a surgical assistant. The official count of surgical items indicated that all sponges were accounted for, but a sponge of the type used in the procedure was found inside Walters some nine-and-a-half years later.

Following the surgery, Walters experienced abdominal cramping. A nurse told her the pain was from childbirth and having gas pumped into her abdomen. At her follow-up appointments with Dr. Spooner a few weeks after surgery, he told her the cramping she continued to experience resulted from uterine contractions that accompany nursing. Walters experienced intermittent pain thereafter, which she attributed to a preexisting health problem that had troubled her periodically. Her next doctor's visit, prompted by abdominal pain, came in March 1998, approximately twenty-seven months after her surgery. From that point on, Walters visited family physicians for a litany of ailments: severe fatigue, insomnia, headaches, infections, uterine problems, bladder problems, urination issues, cysts, and chronic and increasingly severe pain in the area where the sponge was ultimately discovered. For those and other problems, Walters received a host of dif-

---

3. Tex. Civ. Prac. & Rem.Code § 74.251(a) (requiring medical-malpractice claims to be brought within two years of the date of the tort).

4. 685 S.W.2d 11, 12 (Tex.1985).

5. *Id.; see also Yancy v. United Surgical Partners Int'l, Inc.,* 236 S.W.3d 778, 785 (Tex. 2007); *Shah v. Moss,* 67 S.W.3d 836, 842 (Tex.2001); *Morrison v. Chan,* 699 S.W.2d

205, 207 (Tex.1985) (quoting *Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex.1984)).

6. *Rankin,* 307 S.W.3d at 283.

7. *Id.;* Tex. Civ. Prac. & Rem.Code § 74.251(b) ("A claimant must bring a health care liability claim not later than 10 years after the date of the act or omission that gives rise to the claim.").

ferent diagnoses: cystitis, an aphthous ulcer, boils, pharyngitis, fatigue, stomatitis, cholecystitis, and so on. Her doctors ordered numerous tests, including an x-ray, urine tests, and blood tests. The record indicates that while Walters endured intermittent pain during the years following her operation, especially during menstruation, the pain became progressively worse until the sponge was discovered.

In April 2005, Walters visited Dr. Mary Garnepudi, a gynecologist. Garnepudi discovered an unusual lump while examining Walters. Garnepudi referred Walters to a surgeon, who, with the help of a second surgeon, operated on Walters and found the sponge. It was lodged against Walters's small intestine and encapsulated in fibrous tissue, suggesting the sponge had been there for years.

In August 2005, less than two months after the sponge was discovered, Walters sued Cleveland Regional Medical Center, Dr. Spooner, and Shirley Kiefer. Walters alleges the sponge was responsible for the near-decade of medical problems she experienced since the 1995 tubal ligation. The three defendants moved for summary judgment, contending Walters's claim was barred by section 74.251(a) of the Civil Practice and Remedies Code, the two-year statute of limitations for healthcare-liability claims. The trial court agreed and granted summary judgment. The court of appeals affirmed, holding that Walters had not established that the limitations statute violated Open Courts.[8]

## II. Analysis

 Under the Open Courts provision, "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."[9] In *Yancy v. United Surgical Partners International, Inc.*, we elaborated on what a claimant must show to establish an Open Courts violation:

> Unlike the discovery rule, which defers accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the claim, the open courts provision merely gives litigants a reasonable time to discover their injuries and file suit. Because the open courts guarantee does not toll limitations, courts must determine what constitutes a reasonable time for a claimant to discover her injuries and file suit.[10]

In the summary judgment context, the burden is on the plaintiff asserting an Open Courts exception to the statute of limitations to raise a fact issue demonstrating that she did not have a reasonable opportunity to discover the alleged wrong and bring suit before the limitations period expired.[11]

Following *Neagle*, our 1985 sponge case that upheld an Open Courts challenge to the two-year limitations period, we hold that Walters has at least raised a fact issue as to whether she discovered the sponge and brought her suit within a reasonable time.

### A. *Neagle v. Nelson*

*Neagle* addressed errant sponges and the Open Courts guarantee, and nothing dispositive distinguishes *Neagle* from today's case. The two cases share the same procedural posture: the claimant lost on summary judgment at the trial court, lost

---

8. 264 S.W.3d 154, 159.

9. Tex. Const. art. I, § 13.

10. 236 S.W.3d at 784 (internal citations omitted).

11. *Shah,* 67 S.W.3d at 846–47.

again at the court of appeals, and appealed here. They also involve substantially the same statute of limitations.[12] There are other similarities: (1) the sponge was discovered after the limitations period had expired; and (2) only after someone found a lump and performed exploratory surgery.[13]

### B. Walters Raised a Fact Issue

The court of appeals focused on two facts, namely that (1) Walters experienced pain and various ailments immediately after her surgery and for years thereafter, well before the sponge was discovered; and (2) she did not see a doctor for more than two years after her surgery,[14] which may have also been true of the claimant in *Neagle*.[15]

We must review the summary judgment record in the light most favorable to Walters, indulging reasonable inferences and resolving doubts in her favor.[16] Walters raised a genuine issue of material fact as to whether she discovered the sponge and brought her suit within a reasonable time. Walters did not rebuff providers' attempts to discover her injury (for example, by rejecting efforts to diagnose the cause of her pain and various ailments) nor did she unreasonably delay filing suit once the sponge was discovered.[17] There is record evidence that Wal-

ters experienced pain in the years following her surgery, but this evidence does not necessarily show that Walters should have discovered the sponge within the limitations period. In this case, the pain may have been related to a prior condition, and regardless, Walters sought medical help as the pain got worse. Moreover, the record indicates that (1) a nurse and Dr. Spooner told Walters her abdominal pain was not indicative of a problem with her surgery, but was instead caused by gas used to inflate her abdomen during surgery and later by nursing, and (2) years later, and in the course of her worsening condition, at least one other physician was repeatedly apprised of her complaints of abdominal cramping and related symptoms and did not diagnose a foreign object or recommend further testing or referral to a specialist. On Walters's own initiative she eventually went to a gynecologist, who referred her to the surgeons who discovered the sponge. As we have noted in another sponge case:

> All of the procedures for placing objects in and removing them from the body are in the control of the surgeon. It is a virtual certainty that the patient has no knowledge on the day following the surgery—nor for a long time thereafter—that a foreign object was left in the incision.[18]

---

12. *See Neagle*, 685 S.W.2d at 12 (quoting statute of limitations).

13. *Id.* ("Discovery of the sponge occurred ... more than two years after the appendectomy, when, after feeling a mass in his abdomen, [the claimant] submitted to exploratory surgery.").

14. 264 S.W.3d at 156, 159.

15. *See Neagle*, 685 S.W.2d at 12.

16. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 756 (Tex.2007).

17. "A plaintiff may not obtain relief under the open courts provision if he does not use due diligence and sue within a reasonable time after learning about the alleged wrong." *Yancy*, 236 S.W.3d at 785 (emphasis omitted) (quoting *Shah*, 67 S.W.3d at 847).

18. *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex.1967), *superseded by statute*, Professional Liability Insurance for Physicians, Podiatrists, and Hospitals Act of 1975, 64th Leg., R.S., ch. 330, § 1, 1975 Tex. Gen. Laws 864, 865, *as stated in Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex.1985).

## C. The Singularity of Sponge Cases

Sponge cases stand alone in the health-care-liability context. First, they are rare. Second, surgical instruments do not remain inside patients absent negligence. Third, errant items like sponges are exceedingly difficult to discover.[19] In three of our sponge cases—*Neagle, Rankin,* and this case the sponge was only discovered after a lump was noticed on the—claimant's body.[20] As a result, foreign-object cases often invite *res ipsa loquitur* treatment, and some legislatures explicitly exempt such cases from statutes of limitations and repose.[21] Sometimes, these cases are the *lone* exception, while a few states also give special treatment to claims involving fraudulent concealment[22] or minors[23] (as in Texas).[24] The Texas limitations statute does not explicitly save sponge cases, but, as explained below, the Texas repose statute implicitly urges us to.

## D. Giving Meaning to the Statute of Repose

By its terms, the repose statute is a final-is-final deadline for medical-malpractice claims: "This subsection is intended as a statute of repose so that all claims must be brought within 10 years or they

19. *See id.*

20. We have decided two other sponge cases. In *Gaddis*, where we created the discovery rule, a sponge was discovered after exploratory surgery for what was believed to be a tumor but turned out to be a sponge (perhaps because a lump was perceived; it is unclear). *Id.* at 578. In *Bradford v. Sullivan*, 683 S.W.2d 697 (Tex.1985) (per curiam), we reversed a summary judgment in a sponge case that had been granted on limitations grounds, but we gave few details about the discovery of the sponge.

21. *See, e.g.,* Cal.Civ.Proc.Code § 340.5 (West 2010) (excepting foreign-object claims from the repose period); Colo.Rev.Stat. § 13–80–102.5(3)(b) (2009) (excepting foreign-object claims from the repose period and giving claimant two years after discovery to file suit); Mass. Gen. Laws Ann. ch. 260, § 4 (West 2010) (excepting foreign-object claims from a seven-year statute of repose); Miss.Code Ann. § 15–1–36(2)(a) (2009) (exempting foreign-object claims from statute of limitations and also from seven-year repose limit); Ohio Rev.Code Ann. § 2305.113(D)(2) (LexisNexis 2010) (exempting foreign-object claims from repose period); S.C.Code Ann. § 15–3–545(B) (2009) (excepting foreign-object claims from repose limit); Tenn.Code Ann § 29–26–116(a)(4) (2009) (exempting foreign-object claims from repose period); Vt. Stat. Ann. tit. 12, § 521 (2009) (exempting foreign-object claims from repose period); Wash. Rev.Code Ann. § 4.16.350 (West 2010) (excepting foreign-object cases from the statute of limitations and

repose). The Texas Legislature has not expressly addressed sponge cases, but *Neagle* was issued before the current statute of repose was enacted.

22. *See, e.g.,* Cal.Civ.Proc.Code § 340.5 (West 2010) (excepting from the healthcare-liability repose period claims involving fraud, intentional concealment, and presence of a foreign body); Colo.Rev.Stat. § 13–80–102.5(3)(a) (2009) (excepting actions that were knowingly concealed from the repose period); Miss.Code Ann. § 15–1–36(2)(a)–(b) (2009) (excepting only claims where there was fraudulent concealment and foreign-object claims); Tenn. Code Ann. 29–26–116(a)(3)–(4) (2009) (excepting only claims where there was fraudulent concealment and foreign-object claims); Vt. Stat. Ann. tit. 12, § 521 (2009) (excepting only claims where there was fraudulent concealment and foreign-object claims); Wash. Rev. Code Ann. § 4.16.350 (West 2010) (excepting only claims involving fraud, intentional concealment, and presence of a foreign body); Wis. Stat. Ann. § 893.55(1m)(2)-(3) (West 2009) (excepting only claims where there was fraudulent concealment and foreign-object claims).

23. *See, e.g.,* 40 Pa. Stat. Ann. § 1303.513(b)-(c) (West 2009) (excepting only claims by minors and foreign-object claims).

24. *See* Tex. Civ Prac. & Rem.Code § 74.251(a) (giving minors under the age of twelve years old until their fourteenth birthday to file claim).

are time barred."[25] Texas, unlike some other states,[26] does not expressly exempt foreign-body claims from its limitations statute; perhaps lawmakers thought it unnecessary given our holding in *Neagle*. Regardless, Texas does have a catch-all repose statute that contemplates it is at least possible for certain claims to be brought up to eight years after limitations expires.

In 2003, eighteen years after *Neagle*, the Legislature took a fresh look at the health-care-liability landscape and, among other things, revisited time limits in malpractice suits.[27] Although lawmakers did not address *Neagle*, they added a new ten-year repose period, and did so even though the limitations period itself seems absolute: "Notwithstanding any other law," actions must be filed within two years.[28]

The repose statute, however, indicates that the limitations statute—notwithstanding its "[n]otwithstanding any other law" preamble—is not totally exception-free. The Legislature in 2003 was attempting a top-to-bottom overhaul of the State's tort system[29] against a legal backdrop that included *Neagle*, where we held two years can be too short for sponge cases. The repose statute appears to be a legislative recognition that while two years may be constitutionally too short for some claims, ten years may be constitutionally enough for all claims.

Put simply, a ten-year repose period has no purpose unless the two-year limitations period has exceptions, as for *Neagle*-like claims. There is no need for repose *unless* there exists a narrow class of claims that reach beyond the two-year limitations period.

## III. Conclusion

Sponge cases are *sui generis*. They rarely occur, they never occur absent negligence, and when they do occur, laypeople are hard-pressed to discover the wrong. Our cases recognize this, as do many legislatures, which exempt foreign-object claims from limitations and repose periods. Our own Legislature imposed a reasonable ten-year repose period on *all* malpractice claims—with no carve-out for sponge cases—a statute we uphold today in *Rankin* against an Open Courts challenge. The Legislature did nothing to alter courts' treatment of late-filed sponge cases following *Neagle*, where we allowed an Open Courts challenge to limitations. Treating the two-year limitations period as absolute in all circumstances would render the new statute of repose meaningless.

**25.** Tex. Civ. Prac & Rem.Code § 74.251(b).

**26.** *See, e.g., supra* note 21.

**27.** *See Rankin*, 307 S.W.3d at 286 (discussing the addition of a repose limit in 2003).

**28.** *See* Tex. Civ. Prac. & Rem.Code § 74.251. It is undeniable that the statute of limitations contains no discovery rule. We fashioned such a rule in a 1967 sponge case to suspend an earlier limitations provision. *Gaddis v. Smith*, 417 S.W.2d 577, 580 (Tex.1967). The Legislature in 1975 abrogated the court-fashioned discovery rule. *See Sax v. Votteler*, 648 S.W.2d 661, 663 n. 1 (Tex.1983) (discussing the Professional Liability Insurance for Physicians, Podiatrists, and Hospitals Act of 1975,

64th Leg., R.S., ch. 330, § 1, 1975 Tex. Gen. Laws 864, 865, which removed the "accrual" language that had led the Court to find a discovery rule embedded within the statute). Accordingly, in a 1985 case, this Court acknowledged that the Legislature had abrogated the discovery rule. *Morrison v. Chan*, 699 S.W.2d 205, 208 ("[In *Gaddis*, we] held that a cause of action does not accrue until the plaintiff knows, or has reason to know, of his injury. In contrast, article 5.82, section 4 contains no accrual language and thus imposes an absolute two-year statute of limitations regardless of when the injury was discovered.") (emphasis omitted) (quoting *Nelson v. Krusen*, 678 S.W.2d 918, 920 (Tex.1984)).

**29.** *See Rankin*, 307 S.W.3d at 287.

And on this record, we are unwilling to conclude that Walters failed to raise a fact issue as to whether she discovered the sponge and brought suit within a reasonable time.

Accordingly, we reverse the court of appeals' judgment and return this case to the trial court for further proceedings.