# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00243-CV

**Appellants, Tara Stone and Eric Stone// Cross-Appellants, Elizabeth Coronado, M.D. and Community Medical Associates**

**v.**

**Appellees, Elizabeth Coronado, M.D. and Community Medical Associates// Cross-Appellees, Tara Stone and Eric Stone**

**FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT NO. B-09-1533-C, HONORABLE BEN WOODWARD, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

These cross-appeals arise from a "sponge case"—a health care liability claim about a surgical procedure in which a sponge was left inside a patient and not discovered until some years later. The district court granted summary judgment for defendant providers on limitations grounds. The principal issue presented is whether the plaintiff's summary-judgment evidence raised a fact issue as to the applicability of the exception to limitations compelled by the Texas Constitution's Open Courts provision. Concluding that it did, we will reverse and remand.

On March 23, 2007, Dr. Elizabeth Coronado, appellee, performed a caesarian section and hysterectomy on appellant Tara Stone. During this procedure, a surgical sponge was left inside Tara's abdomen.[1] The sponge was finally discovered in late September or early October 2009, and

---

[1] When necessary to distinguish between appellants, a married couple who share a common surname, we will use their first names for clarity.

was surgically removed on October 23. On December 28, 2009, Tara, along with her husband, Eric, filed suit against Coronado and Coronado's employer, Community Medical Associates (collectively, appellees), seeking damages allegedly attributable to Coronado's professional negligence in leaving the sponge in Tara's body.[2] Appellees pleaded the affirmative defense of limitations and later sought summary judgment on that ground, relying on the two-year period established by section 74.251(a) of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a) (West 2011) (generally requiring that "no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim").[3] Appellees attached to their summary-judgment motion copies of each side's live pleadings and a March 23, 2007 "Operative Note" prepared by Coronado that described Tara's surgery earlier that day.

As the Stones acknowledge, appellees' motion and attachments met their summary-judgment burden of establishing that the suit was filed after the expiration of section 74.251(a)'s two-year limitations period—limitations had expired on March 23, 2009, and the Stones did not file suit until December 28 of that year. *See id.* As the ground for denying summary judgment against their claims, the Stones sought to raise a genuine issue of material fact issue as to the applicability of the exception to this limitations period compelled by the Open Courts provision of the Texas Constitution—whether they lacked a "reasonable opportunity to discover the alleged

---

[2] The Stones also sued the hospital where the 2007 surgery was performed, San Angelo Community Medical Center, L.L.C., as well as a radiologist and the professional association that employed him. The Stones later non-suited their claims against the radiologist and his employer, and their claims against San Angelo Community Medical Center were later severed.

[3] In the absence of material intervening substantive changes, we cite to the current version of the code for convenience.

2

wrong and bring suit before the limitations period expired." *Walters v. Cleveland Reg'l Med. Ctr.*, 307 S.W.3d 292, 295 (Tex. 2010); *see* Tex. Const. art. I, § 13.  To meet this burden, the Stones presented essentially three categories of summary-judgment proof:  (1) ten sets of medical records from various providers concerning Tara's surgery in 2007 and medical care she received in 2009, including care leading up to the ultimate discovery and removal of the sponge; (2) a document purporting to be a personal calendar that Tara had maintained around the time the sponge was discovered; and (3) copies of condensed versions (4 pages to 1) of the oral depositions of Tara and Coronado that did not include the witnesses' signatures or a reporter's certification.

Appellees objected to and moved to strike the entirety of the Stones' summary-judgment evidence on several evidentiary and procedural grounds.  The district court excluded the medical records as hearsay, holding that the affidavit on which the Stones had relied to prove up hearsay exceptions, which had been prepared by one of their attorneys, failed to present facts establishing the foundation for any such exceptions.  The court similarly excluded the calendar for lack of foundation.  On the other hand, the district court rejected complaints by appellees that the Stones' failure to include witness signatures or reporter's certifications with the depositions was fatal, and admitted and considered that evidence in opposition to appellees' motion.  However, concluding that the deposition testimony did not raise a genuine issue of material fact as to the applicability of the Open Courts exception to limitations, the district court granted a final summary judgment that the Stones take nothing on their claims against appellees.[4]

---

[4]  It was in this same order that the district court severed out the Stones' claims against San Angelo Community Medical Center, making the summary-judgment order final.

The Stones and appellees each filed notices of appeal. In the first of two issues on appeal, the Stones urge that the district court erred in granting summary judgment for appellees because, they assert, the evidence raised a genuine issue of material fact as to whether the Open Courts exception to limitations applies. In their second issue, the Stones argue that the district court abused its discretion in excluding the medical records and calendar from evidence, which, in their view, raises further fact issues regarding the Open Courts exception. In their cross-appeal (or, alternatively, as a cross-point), appellees complain that the district court abused its discretion in failing to exclude the two depositions. Because we conclude that Tara's deposition testimony is ultimately dispositive, we will begin our analysis with appellees' complaint challenging its admission.

Whether to admit or exclude evidence lies within the sound discretion of the trial court. *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998). We review a trial court's decision to admit or exclude evidence under an abuse-of-discretion standard. *National Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000). The test for abuse of discretion is not whether, in our opinion, the facts present an appropriate case for the trial court's actions. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). Rather, it is a question of whether the trial court acted without reference to any guiding rules and principles. *Id.* In other words, we must determine whether the court's rulings were arbitrary or unreasonable. *Id*. at 242. The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id*. Nor does a mere error of judgment amount to an abuse of discretion. *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex. 1989).

Although appellees acknowledge on appeal that the copies of the two depositions need not be authenticated, *see McConathy v. McConathy*, 869 S.W.2d 341, 342 (Tex. 1994) (per curiam), they assert that the copies are nonetheless inadmissible because they are "unsworn and unsigned," citing Texas Rule of Evidence 603 (requiring that witnesses testify under oath or affirmation) and several cases where testimony was excluded on that basis. *See Hines v. Texas Dep't of Family & Protective Servs.*, No. 01-08-00045-CV, 2009 Tex. App. LEXIS 9759, at *10 (Tex. App.—Houston [1st Dist.] Dec. 3, 2009, no pet.) (mem. op.) (holding that grandmother's informal statements in court were not testimony when "she spoke informally with the trial court before the parties began presenting evidence, and neither party called her as a witness"); *Carr v. Hertz Corp.*, 737 S.W.2d 12, 13 (Tex. App.—Corpus Christi 1987, no writ) (holding that deposition excerpts were not summary-judgment evidence because "these portions of deposition testimony do not reflect whether [deponents] were under oath upon giving their testimony"); *First State Bank of San Diego v. Duval Cnty.*, 567 S.W.2d 271, 272 (Tex. Civ. App.—Waco 1978, writ ref'd n.r.e.) (deposition affirmatively reflected that it was neither sworn to nor signed); *Graves v. George Dullnig & Co.*, 548 S.W.2d 502, 504 (Tex. Civ. App.—Eastland 1977, no writ) (where summary-judgment motion referred to depositions "on file" that were neither actually filed with the court nor attached to the motion, an unsigned copy that was received, not filed, by the trial court after the motion was decided could not constitute summary-judgment evidence); *Cauble v. Key*, 256 S.W. 654, 655 (Tex. Civ. App.—Austin 1923, no writ) (holding that there was no statement of facts because "[t]he bills of exception undisputedly show that on the trial the plaintiff was the only witness, and that he was not sworn"). The central feature in these cases, as they relate to the use of depositions as summary-judgment evidence, is that the deposition either affirmatively showed that

the witness had not been sworn, *e.g.*, *First State Bank*, 567 S.W.2d at 272, or deposition excerpts were submitted that did not show whether or not the witness had been sworn, *Carr*, 737 S.W.2d at 13. The present case is distinguishable. In contrast to the cases on which appellees rely, the Stones attached the entirety of the two depositions, and each reflects that the witness was sworn prior to testifying. Because each deposition on its face reflects that the witness was sworn prior to testifying, the district court did not abuse its discretion in admitting the depositions as summary-judgment evidence.[5] We overrule appellees' issue.

---

[5] Appellees also cite several cases that address instances where there is a missing or defective jurat on an affidavit. *See Ford Motor Co. v. Leggat*, 904 S.W.2d 643, 645 (Tex. 1995); *Perkins v. Crittenden*, 462 S.W.2d 565, 567-68 (Tex. 1970) (holding that because purported affidavit contained only acknowledgment, it was not an affidavit at all); *Residential Dynamics, LLC v. Loveless*, 186 S.W.3d 192,197 (Tex. App.—Fort Worth 2006, no pet.) (noting that *Perkins* may not be current Texas law and holding that affidavit was sufficient because, even without a jurat, it noted that affidavit had been sworn); *Medford v. Medford*, 68 S.W.3d 242, 247 (Tex. App.—Fort Worth 2002, no pet.) (holding that statement that was not notarized was not affidavit); *Laman v. Big Spring State Hosp.*, 970 S.W.2d 670, 672 (Tex. App.—Eastland 1998, pet. denied) (stating that affidavits attached to motions were fatally defective because they did not contain proper jurats); *Clendennen v. Williams*, 896 S.W.2d 257 (Tex. App.—Texarkana 1995, no writ) (stating that absence of jurat is a substantive defect rather than a defect of form, and it renders statement incompetent as summary-judgment evidence). These cases either support the Stones' position or have recently been overruled. In *Ford Motor Co.*, the supreme court rejected the argument that an affidavit was invalid due to a defective jurat because the affidavit met the Texas statutory requirements for affidavits. 904 S.W.2d at 645. The supreme court noted that the affidavit was valid, even without the jurat, because it contained an acknowledgment and recited that the affiant "was 'first duly sworn,' and 'on his oath' stated what followed." *Id.*; *accord Residential Dynamics, LLC*, 186 S.W.3d at 197. Recently, in *Mansions in the Forest, L.P. v. Montgomery County*, the supreme court held that neither the government code nor Rule of Civil Procedure 166a require a summary-judgment affidavit to contain a jurat. No. 10-0969, 2012 Tex. LEXIS 338, at *1 (Tex. Apr. 20, 2012) (per curiam). The supreme court explained that "the record must contain some evidence that the purported affidavit was sworn to by [the affiant] before an authorized officer." *Id.* at *7. The court further overruled *Laman*, *Clendennen*, *Medford*, and other such opinions to the extent that they were inconsistent with the court's holding that, outside the context of affidavits offered to verify copies of documents, the absence of a jurat is not a defect of substance. *Id.* at *9-10.

Having concluded that the district court did not abuse its discretion in admitting the two depositions into the summary-judgment record, we now turn to whether either raised a genuine issue of material fact as to whether the Stones lacked a "reasonable opportunity to discover the alleged wrong and bring suit before the limitations period expired." *Walters*, 307 S.W.3d at 295.[6] "[C]ourts must determine what constitutes a reasonable time for a claimant to discover her injuries and file suit." *Id.* (quoting *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 784 (Tex. 2007)). However, the underlying facts that bear upon that inquiry are ascertained by review of the summary-judgment evidence in the light most favorable to the Stones, indulging reasonable inferences and resolving doubts in their favor. *Id.* at 296.

In her deposition, Tara testified that she first learned that a surgical sponge had been left inside her body "within a day or two" after a September 29, 2009 doctor visit (i.e., on or about October 1, 2009), when she received the results of a CT scan that had been performed during her September 29 visit. Tara underwent surgery to remove the sponge a few weeks later, on October 23. Tara acknowledged that she had experienced lower abdominal pain and tenderness as early as "around two, three or four weeks" before a September 16, 2009 doctor visit in which she sought treatment concerning a fungal infection. She reported her abdominal symptoms to the doctor treating her for the fungal condition, leading in turn to the September 29 visit with a different doctor,

---

[6] Appellees assert that we should not consider the Stones' first issue because the Stones have not provided record cites in compliance with Texas Rule of Appellate Procedure 38.1. While the Stones perhaps could have been more thorough in citing record support for their factual assertions, the cites they have provided support their facts and arguments, and this Court was able to ascertain from their brief the pertinent facts, legal authority, and substantive analysis. *Cf. Valadez v. Avitia*, 238 S.W.3d 843, 845 (Tex. App.—El Paso 2007, no pet.) (finding waiver where two-and-a-half page brief lacked any citations to authority and did not contain a statement of the issues for review).

who ordered the CT scan. Tara testified that she had initially attributed her pain and discomfort to the likely presence of scar tissue from three prior caesarian sections (the one performed by Coronado was her third) and a tummy tuck, an idea or assumption that, according to Tara, came from Coronado, who "said I don't scar well and that—that I can expect some scar tissue." Tara denied having been treated by anyone for abdominal pain or a fungal infection prior to September 16, 2009.

During Tara's deposition, appellees' counsel, purporting to cite or quote various medical records that counsel ultimately succeeded in having excluded from evidence, vigorously cross-examined Tara regarding what were portrayed as admissions by Tara to her health care providers that she had experienced abdominal pain as early as September 2008 and had already discovered an abdominal mass as early as three to four months prior to her September 16, 2009 doctor visit. In response to these questions, Tara either denied having reported such facts to the provider or claimed that she could not remember precisely what she told the provider.

Viewing this evidence in the light most favorable to the Stones, indulging reasonable inferences and resolving doubts in their favor, *Walters*, 307 S.W.3d at 296, Tara did not discover the sponge inside her until around October 1, 2009; had not experienced symptoms related to the sponge until mid-August to early September 2009; and to the extent she had, she had attributed the symptoms—based on Coronado's previous advice—to the presence of scar tissue. Appellees' arguments to the contrary would have us deviate from the limitations of our standard of review on summary judgment, and ultimately amount to attacks on the credibility and weight of the testimony from Tara that tends to favor her position.

We further conclude that this evidence, viewed through the prism of our summary-judgment review standard, raises a genuine issue of material fact as to whether the Stones lacked

a "reasonable opportunity" to discover the alleged wrong and bring suit before the limitations period expired. In reaching this conclusion, we are guided by the Texas Supreme Court's analysis in *Walters*. Like the present case, *Walters* reviewed a summary judgment based on the claimant's failure to bring her "sponge case" within the two-year statute of limitations period. *Id*. at 294. Indeed, Walters did not file suit until over nine-and-a-half years after the disputed surgery. *Id*. The court of appeals concluded limitations applied because "(1) Walters experienced pain and various ailments immediately after her surgery and for years thereafter, well before the sponge was discovered; and (2) she did not see a doctor for more than two years after her surgery. . . ." *Id*. at 296. The supreme court disagreed.

While Walters experienced pain following surgery, that fact alone, in the supreme court's view, did not demonstrate that she should reasonably have discovered the sponge. *Id*. The court pointed out evidence that a nurse had assured Walters "her abdominal pain was not indicative of a problem with her surgery," but instead could be attributed to other causes. Despite Walters' repeated complaints, her treating physician "did not diagnose a foreign object or recommend further testing or referral to a specialist." *Id*. After years of pain and varied diagnoses, Walters' gynecologist discovered an unusual lump, which led to the surgery that discovered the sponge. *Id*. at 295. Given these facts, the supreme court was unwilling to conclude that Walters failed to raise a fact issue as to whether she discovered the sponge and brought suit within a reasonable time. *Id.* at 299.

The Texas Supreme Court further observed that "'[i]t is a virtual certainty that the patient has no knowledge on the day following the surgery—nor for a long time thereafter—that a foreign object was left in the incision.'" *Id.* at 296 (quoting *Gaddis v. Smith*, 417 S.W.2d 577, 580

9

(Tex. 1967), *superseded by statute*, Professional Liability Insurance for Physicians, Podiatrists, and Hospitals Act of June 3, 1975, 64th Leg., R.S., ch. 330, § 1, 1975 Tex. Gen. Laws 864, 865, *as stated in Morrison v. Chan*, 699 S.W.2d 205, 208 (Tex. 1985)).  It added:

> Sponge cases stand alone in the healthcare-liability context. First, they are rare. Second, surgical instruments do not remain inside patients absent negligence. Third, errant items like sponges are exceedingly difficult to discover. In three of our sponge cases—*Neagle*, *Rankin*, and this case—the sponge was only discovered after a lump was noticed on the claimant's body.

*Id.* at 297 (footnotes omitted); *see Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283 (Tex. 2010); *Neagle v. Nelson*, 685 S.W.2d 11 (Tex. 1985).

If anything, the summary-judgment evidence here, taken as true, would establish that Tara had even less of an opportunity to discover her injury than the claimant in *Walters*.  Unlike the claimant in *Walters* who experienced constant pain and maladies for almost ten years, Tara testified that she did not experience the abdominal pain that led to the sponge's discovery until approximately two-and-a-half years following the surgery.  Tara further testified that less than two months passed between her initial abdominal pain and the discovery of the sponge.  And prior to discovery of the sponge, Tara attributed her pain and discomfort to the presence of scar tissue based on her discussions with Coronado.  Informed by the Texas Supreme Court's guidance in *Walters*, we hold that the Stones have also raised a fact issue as to whether they lacked a "reasonable opportunity" to discover Tara's injury prior to the expiration of limitations.

We likewise conclude that the Stones have raised a fact issue as to whether they used due diligence in seeking judicial relief following the sponge's discovery.  After the sponge was discovered, the Stones obtained counsel and filed suit within roughly two to three months.  Based

10

on this evidence, we have little trouble reaching the same conclusion the supreme court reached in *Walters*. *Id*. at 295 & n.17 (plaintiffs may not obtain relief under the open courts provision if they do not use due diligence and sue within a reasonable time after learning about the alleged wrong).

We sustain the Stones' first issue and need not reach their second. *See* Tex. R. App. P. 47.1. We reverse the district court's summary judgment and remand the Stones' claims for further proceedings.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Reversed and Remanded

Filed: June 6, 2012