**Affirmed and Memorandum Opinion filed May 30, 2024.**



In The

# Fourteenth Court of Appeals

### NO. 14-23-00314-CV

## LOYD LANDON SORROW, SR., Appellant

## V.

## THE UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT HOUSTON AND MICHAEL SEALE, M.D., Appellees

**On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2017-33383**

### MEMORANDUM OPINION

Raising five issues on appeal, pro se appellant Loyd Landon Sorrow Sr. argues the trial court erred by rendering summary judgment on his claims against appellees The University of Texas Health Science Center at Houston (UTHealth) and Michael Seale, M.D. (we collectively refer to the appellees as the medical defendants). Concluding that Sorrow did not raise a fact issue to defeat summary judgment on his claims against the medical defendants, we affirm.

# I.   Background

Sorrow filed suit in 2017, naming the Harris County Sheriff,[1] The University of Texas Health Science Center of Houston,[2] and "Dr. Seal," as defendants and alleged a variety of tort, statutory, and constitutional violations stemming from Sorrow's medical treatment while in the custody of the Sheriff during his pre-trial detention. In his petition, Sorrow asserts that between 2001 and 2002—at least fifteen years earlier—he was prescribed a "mixture of highly powerful anti-depressants, narcotics, and narcotic[-]like pills and[/]or medications" by doctors when he was in jail that caused him to have "many adverse reactions, side effects, and adverse side effects, . . . such as audio-visual hallucinations, anxiety attacks, agitation, memory lapses and loss." Sorrow alleges that Dr. Seale was one of the doctors who prescribed the medication he alleged caused his injuries. Dr. Seale treated Sorrow as an employee of UTHealth, which contracts with Harris County to provide medical treatment to persons in the custody of the county.[3] Sorrow alleges these actions also resulted in the denial of due process because the medications he was prescribed dulled his reasoning and resulted in a "medicated mental restraint" for his court hearings.

In 2018, the Sheriff moved for summary judgment on Sorrow's claims against the Sheriff, which Sorrow appealed to this court. We concluded the trial

---

[1] Sorrow made several arguments regarding the person or persons he intended to sue at the Harris County Sheriff's department. For purposes of this opinion, we assume he intended to name persons working for the Sheriff.

[2] *Compare* Tex. Educ. Code Ann. § 65.02(9) ("The University of Texas Health Science Center at Houston") *with* Tex. Educ. Code Ann. § 73.001 ("The University of Texas at Houston").

[3] Sorrow also claimed the Sheriff neglected him and failed to intervene, prevent, or exercise the degree of safe care that professional guardians owe mentally ill pre-trial detainees within the boundaries provided by Texas law and the U.S. and Texas Constitutions. The Sheriff is not a party to this appeal.

court added finality language to its otherwise interlocutory order, which was error with respect to Sorrow's claims against the medical defendants because the medical defendants were unserved and the Sheriff's motion for summary judgment did not state any grounds concerning the unserved medical defendants. *See Sorrow v. Harris Cnty. Sheriff*, 622 S.W.3d 496, 505–06 (Tex. App.—Houston [14th Dist.] 2021, pet. denied) (*Sorrow I*). We remanded the case to the trial court for further proceedings limited to Sorrow's claims against the unserved medical defendants. *Id*. at 510.

On remand, the medical defendants answered and then filed a joint motion for summary judgment arguing that Sorrow's claims were barred by the statute of limitations, which had expired and to which no tolling doctrine applied. The medical defendants further argued that Sorrow's claims against them were barred by the statute of repose applicable to health-care-liability claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.251. The trial court rendered summary judgment and signed an interlocutory order dismissing Sorrow's claims against the medical defendants in May 2022. The trial court then signed an order severing the claims against the medical defendants from the claims against the Sheriff, making the judgment against the medical defendants final because it actually disposed of all claims and all parties with respect to the medical defendants. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192 (Tex. 2001).

Sorrow appealed. Although the medical defendants challenged the timeliness of his appeal and, thus, our jurisdiction, we concluded that Sorrow prematurely filed his notice of appeal before what became the final judgment. Therefore, Sorrow's appeal was timely, and we have jurisdiction. *Sorrow v. University of Texas Health Sci. Ctr. at Houston and Michael Seale, M.D.*, No. 14-23-00314-CV (Tex. App.—Houston [14th Dist.] Sept. 14, 2023, order).

## II. ANALYSIS

Sorrow challenges the trial court's rendition of summary judgment in the following five issues: (1) the trial court misapplied the equitable-tolling doctrine; (2) the trial court erred in evaluating the evidence; (3) the trial court erred on fact issues; (4) the trial court erred in "applying the law in regards Final Judgments to unserved parties"; and (5) the trial court erred by "not deciding fact issues for opioid litigation as a related cause[.]"[4]

### A. Equitable tolling

In issue one, Sorrow argues the trial court's conclusion—that his claims against the medical defendants were untimely—was erroneous. After the medical defendants filed their traditional summary-judgment motion, Sorrow objected to the motion in part because he believed he was entitled to equitable tolling for 2002–2010 because he was "drugged and suffering depression" during that time. Sorrow argues that he is entitled to tolling because he was not capable of diagnosing his injuries while in prison. The trial court did make not any findings of fact or specifically address the issue of equitable tolling.

A defendant seeking traditional summary judgment on a limitations defense must establish "(1) when the cause of action accrued, and (2) that the plaintiff brought its suit later than the applicable number of years thereafter—i.e., that 'the statute of limitations has run.'" *Draughon v. Johnson*, 631 S.W.3d 81, 89 (Tex. 2021) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 221

---

[4] As we explained in *Sorrow I*, we construe the claims of an incarcerated pro se litigant with liberality and patience. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *see Minix v. Gonzales*, 162 S.W.3d 635, 637 n.1 (Tex. App.—Houston [14th Dist.] 2005, no pet.). However, Sorrow must comply with all applicable rules of procedure and substantive law. *Burbage v. Burbage*, 447 S.W.3d 249, 258 (Tex. 2014) (explaining that courts may not stray from procedural rules simply because litigant represented self); *see also Harrison v. Reiner*, 607 S.W.3d 450, 457 (Tex. App.—Houston [14th Dist.] 2020, pet. filed).

(Tex. 2003)). The defendant's burden includes negating equitable doctrines the plaintiff has raised "that affect which days count toward the running of limitations" but not those that "overcome the statute of limitations even if the defendant conclusively proves that it has run." *Id.* at 88, 92. This distinction may require a court to decide whether an equitable doctrine affects the running of limitations or overcomes the expiration of a limitations period. *See Zive v. Sandberg*, 644 S.W.3d 169, 174 (Tex. 2022). If the defendant discharges this burden, the plaintiff may still defeat summary judgment by "adduc[ing] summary judgment proof raising a fact issue in avoidance of the statute of limitations." *KPMG Peat Marwick v. Harrison Cnty. Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex. 1999).

It is undisputed that the medical care at issue occurred from 2001 to 2002. In his appellate brief, Sorrow reiterates that his claims in this case "stem from 2001–02 pretrial, trial, and posttrial detention and release." Sorrow argues that the prescription of medications by the medical defendants impaired his judgment and his ability to participate in his 2002 criminal trial, thus subjecting him to "drug induced judicial prosecution" resulting in his criminal conviction. He also asserts that the combination of medicines prescribed to him by the medical defendants caused "4 or 5 heart attacks, hypertension exacerbation, anxiety, and depression (suicidal), with severe hallucinations, and delusions."

Although Sorrow describes his claim against Dr. Seale as based on a violation of the Health and Safety Code, Sorrow actually pleads a health-care-liability claim against Dr. Seale.[5] *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.001(13) (a "'Health care liability claim' means a cause of action against a health care provider or physician for treatment, lack of treatment, or other

---

[5] In *Sorrow I*, we previously stated that Sorrow did not plead a health-care-liability claim with respect to the Harris County Sheriff. *Sorrow I*, 622 S.W.3d at 502 n.6. The Sheriff is not a health-care provider and his claims against the Sheriff were not health-care-liability claims.

claimed departure from accepted standards of medical care, or health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant"); *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012) (courts must focus on set of operative facts "underlying the claim" that are relevant to alleged injury, not on how "the plaintiff's pleadings describ[e] the facts or legal theories asserted."). If the facts of a claim "could support claims against a physician or health care provider for departures from accepted standards of medical care, health care, or safety or professional or administrative services directly related to health care," then Civil Practice and Remedies Code chapter 74 applies "regardless of whether the plaintiff alleges the defendant is liable for breach of any of those standards." *Collin Creek Assisted Living Ctr., Inc. v. Faber*, 671 S.W.3d 879, 885 (Tex. 2023) (quoting *Loaisiga*, 379 S.W.3d at 255); *Yamada v. Friend*, 335 S.W.3d 192, 196 (Tex. 2010) ("Whether a claim is a health care liability claim depends on the underlying nature of the claim being made.").

The statute of limitations for a health-care-liability claim is two years. Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a) (two-year limitation period); (b) (ten-year statute of repose). As against UTHealth, Sorrow alleges UTHealth did not provide safe medical care as it was contracted to do for Harris County prisoners and it did not properly oversee the care provided by Dr. Seale. Therefore, Sorrow's claim against UTHealth is also a health-care-liability claim.

Although Sorrow did raise the issue of equitable tolling in the trial court, he has never explained a legal basis for applying equitable tolling to his claims. The supreme court has invoked equitable tolling sparingly. *Levinson Alcoser Associates, L.P. v. El Pistolon II, Ltd.*, 670 S.W.3d 622, 628 (Tex. 2023).[6]

---

[6] The Supreme Court of Texas has not articulated a general test for determining when

Equitable tolling is unavailable if it is inconsistent with the text of a relevant statute. *Id*. at 627; *see also Texas Workers' Comp. Ins. Fund v. Del Indus., Inc.*, 35 S.W.3d 591, 596 (Tex. 2000) ("[t]he common law has been dramatically engrafted upon by the legislature. Where the common law is revised by statute, the statute controls.") (quoting *Bartley v. Guillot*, 990 S.W.2d 481, 485 (Tex. App.—Houston [14th Dist.] 1999, pet. denied)).

The statute of limitations for a health-care-liability claim contains no discovery rule:

> Notwithstanding any other law and subject to Subsection (b), no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the subject of the claim or the hospitalization for which the claim is made is completed . . . . Except as herein provided this section applies to all persons regardless of minority or other legal disability.

Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a); *see Walters v. Cleveland Reg'l Med. Ctr.*, 307 S.W.3d 292, 298 (Tex. 2010) ("It is undeniable that the statute of limitations [governing health-care-liability claims] contains no discovery rule."). However, the open courts provision of the Texas Constitution provides litigants a reasonable time to discover their injuries and file suit without being time-barred by

---

equitable tolling is available. *Levinson Alcoser*, 670 S.W.3d at 630. Most of the tests for equitable tolling come from federal law and are premised on the concept of excusable ignorance of the limitations period or with respect to a litigant who diligently pursued his rights but could not timely bring an action. *E.g.*, *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) ("As a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."); *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998) ("Equitable tolling focuses primarily on *the plaintiff's* excusable ignorance of the limitations period."). Equitable tolling, a long-established feature of American jurisprudence, is derived from "the old chancery rule[.]" *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). However, the Supreme Court of Texas has explained that these tests cannot be applied to any statute of limitations contained in statute, because parties are presumed to know the law. *Levinson Alcoser*, 670 S.W.3d at 630.

applicable limitations periods. Tex. Const. art. I, § 13; *Walters*, 307 S.W.3d at 295. The doctrine is commonly applied to health-care-liability claims when the malpractice cannot be readily discovered, such as errant-sponge cases. *See id*. at 295–96 (citing *Neagle v. Nelson*, 685 S.W.2d 11, 12 (Tex. 1985)). Under the open courts provision, a claimant must "use due diligence and sue within a reasonable time after learning about the alleged wrong" to overcome a limitations defense. *Yancy v. United Surgical Partners Int'l*, 236 S.W.3d 778, 785 (Tex. 2007) (quoting *Shah v. Moss*, 67 S.W.3d 836, 847 (Tex. 2001)).

The central question is whether it was impossible or exceedingly difficult for the plaintiff to discover the alleged wrong and sue within the two-year statute of limitations period. *See Shah*, 67 S.W.3d at 846–47. It is the plaintiff's burden to show that the nature of his claim made it impossible or exceedingly difficult to discover the alleged wrong and bring suit within the two-year period. *See Walters*, 307 S.W.3d at 296–97. Here, Sorrow argues that he is not a medical professional, not an expert on medications, and could not diagnose himself. Sorrow's ability to understand the mechanism of his injuries is different and distinct from his ability to understand that he was injured.

Although he may not have been educated about the various medicines he was prescribed, Sorrow had concerns about the effects of his medications in 2002. In his offer of proof filed in the trial court, Sorrow admits that "[t]hese same issues have been in litigation since 2002."[7] The record establishes that Sorrow has been consistently and continuously alleging since 2002 in various legal proceedings that the medications prescribed by the medical defendants in 2001 to 2002 caused him

---

[7] He also states that this case relates back to "Criminal Court in 2001–02." However, Sorrow does not explain how any issues in his criminal case might affect the civil liability of the medical defendants for their medical treatment of him.

injury.[8] The record demonstrates Sorrow had no difficulty recognizing his alleged injuries and in fact was aware of his alleged injuries before the limitations period expired.[9] Therefore, the statute of limitations ran on his claims against the medical defendants years before he filed this suit. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.251(a).[10] Sorrow also did not establish his entitlement to any tolling provision. Therefore, the trial court did not err in rendering summary judgment on Sorrow's claims based on the statute of limitations.[11]

We overrule issue 1.

## B. Evaluating the evidence

In issue two, Sorrow argues that the trial court erred in weighing the evidence of the correct accrual date triggering limitations pursuant to the "Hughes Rule."

The supreme court explained that "when an attorney commits malpractice in

---

[8] In 2005, Sorrow filed an application for a writ of habeas corpus (which he included in his summary-judgment response) in which he explained as one of his grounds that he pleaded guilty involuntarily in his 2002 criminal case due to "unknown and unforeseen side effects and or interactions created by the use of four(4), different 'Prescribed (narcotic like) Medications' for the treatment of pain relief, hypertension and mental depression control." In 2011, Sorrow filed suit against various defendants, including Dr. Seale, based on the same factual allegations.

[9] We reached the same conclusion regarding Sorrow's constitutional, tort, and negligence claims against the Sheriff, based on the same medical treatment and medication at issue here, which were also filed after statute of limitations ran. *Sorrow I*, 622 S.W.3d at 503. In that case, Sorrow argued that the discovery rule should have tolled the statute of limitations.

[10] We need not address the issue here, but the statute of repose in Chapter 74 puts a limit on how long a health-care-liability claim can be tolled. *See* Tex. Civ. Prac. & Rem. Code Ann. § 74.251(b) ("This subsection is intended as a statute of repose so that all claims must be brought within 10 years or they are time barred."). Therefore, even if Sorrow had established some tolling of the limitations on his claims, the statute of repose would have barred the claims against the medical defendants.

[11] We also note that Sorrow did not comply with the provisions of Chapter 74, which requires presuit notice and the filing of an expert report. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 74.051, .351.

the prosecution or defense of a claim that results in litigation, the statute of limitations on the malpractice claim against the attorney is tolled until all appeals on the underlying claim are exhausted." *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 156 (Tex. 1991). The doctrine has never been extended to professional liability beyond legal-malpractice claims. *Erikson v. Renda*, 590 S.W.3d 557, 565 (Tex. 2019). Sorrow offers no authority, and we have found none, that would extend the *Hughes* tolling doctrine to health-care-liability claims.

Sorrow also appears to conflate the accrual of his injury with his discovery of his injury. A cause of action accrues when facts come into existence that permit a plaintiff to recover. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017). Generally, in the context of a tort, this is when a wrongful act causes an injury. *See Southwestern. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 721 (Tex. 2016) ("As a general proposition, a cause of action accrues when a wrongful act causes a legal injury, even if the fact of injury is not discovered until later . . . ."); *Murray*, 800 S.W.2d at 828. In his appellate brief, Sorrow reiterates that his claims in this case "stem from 2001-02 pretrial, trial, and posttrial detention and release." The accrual of Sorrow's alleged injury occurred in 2001 to 2002. The summary-judgment evidence, as well as the admission made by Sorrow in his pleadings, reflect the accrual of his alleged injury in 2001 to 2002.

Sorrow's discussion of the accrual of his injury is really another argument that the statute of limitations should be tolled. Sorrow claims that he was not able to recognize his injuries and argues that he is not a medical professional and was not capable of diagnosing himself. However, Sorrow was aware of his injuries within the limitations period, and limitations ran on his claims against the medical defendants years before he filed this suit.

We overrule issue two.

## C.     Fact issues

In issue three, Sorrow argues that the trial court erred because there was a fact issue as to the discovery rule precluding summary judgment on his claims. However, as discussed above, we have already concluded that limitations ran on his claims against the medical defendants years before he filed this suit. To the extent that specific facts exist which Sorrow believes were disregarded by the trial court, he does not identify those specific facts and how they were presented to the trial court in his appellate brief. *See* Tex. R. App. P. 38.1(i).

We overrule issue three.

## D.     Noncompliance with the mandate

In issue four, Sorrow argues that the trial court did not comply with this court's mandate in *Sorrow I*. He claims: "the trial court had no right to allow the appellees to lead the mandates proceeding, even inappropriately as their motions and summary judgment were, in accordance to the [sic] Mandates wording." He further states the "trial court cannot give a judgment or grant more relief than the mandate provides."

This court previously remanded the case to the trial court "for further proceedings limited to Sorrow's claims against the unserved defendants." *Sorrow I*, 622 S.W.3d at 510. On remand, the medical defendants—who were the then-unserved defendants—appeared and answered. The merits of Sorrow's claims against the medical defendants were addressed as intended by this court's mandate in *Sorrow I* directing further proceedings. We discern no error on the part of the trial court for receiving and ruling on the motions of the medical defendants.

We overrule issue four.

11

**E. Opioid litigation**

In issue five, Sorrow argues the trial court erred by not weighing the evidentiary value of pleadings he filed in the "Harris County Texas Opioid Litigation." Sorrow also argues the trial court should have held a hearing on the evidence because "Harris County Texas admits it was deceived by the Opioid Defendants and thus, it harmed pretrial detainees in their custody." However, Sorrow offers no explanation of how the separate opioid proceeding (presumably against a drug manufacturer) or Sorrow's interpleader into that litigation have any legal effect on whether his claims against the medical defendants were barred by limitations.

We overrule issue five.

## III. CONCLUSION

We affirm the judgment of the trial court as challenged on appeal.

/s/ Charles A. Spain
Justice

Panel consists of Justices Wise, Spain, and Hassan.

12