

NUMBER 13-13-00566-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

| | |
|---|---|
| **C.L. THOMAS, INC. AND THOMAS FUELS LUBRICANTS & CHEMICALS, INC.,** | **Appellants,** |
| **v.** | |
| **LEXINGTON INSURANCE COMPANY AND ACORDIA OF TEXAS, INC.,** | **Appellees.** |

## On appeal from the 377th District Court of Victoria County, Texas.

## MEMORANDUM OPINION

### Before Justices Rodriguez, Garza and Benavides
### Memorandum Opinion by Justice Garza

Appellants, C.L. Thomas, Inc. and Thomas Fuels Lubricants and Chemicals, Inc.

(collectively "Thomas"), challenge the summary judgment awarded in favor of appellees,

Lexington Insurance Company ("Lexington") and Acordia of Texas, Inc. ("Acordia"), in a

dispute regarding insurance coverage for an arbitration award to a Thomas employee. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Gregory Morris, a truck driver employed by Thomas, suffered stab wounds to his neck in a physical altercation with a fellow Thomas truck driver on December 29, 2006. The dispute apparently arose when the other driver learned that both he and Morris were assigned to drive the same truck. Thomas fired both employees. In March 2007, Morris filed wrongful termination complaints with the Texas Workforce Commission and the Equal Employment Opportunity Commission, which were denied. He then filed suit against Thomas, alleging wrongful termination and defamation. The trial court granted Thomas's motion to abate the proceedings and compel arbitration. After arbitration, Morris was awarded $5,091,777.48 including arbitrator fees, and a counterclaim made by Thomas was rejected. The trial court rendered judgment on the arbitration award and Thomas satisfied the judgment.

Seeking to recoup the amount it paid to Morris, Thomas made claims under insurance policies it had with Lexington and Great American Insurance Group ("Great American"). The Great American policy provided coverage for "all loss" that Thomas may be legally obligated to pay as a result of an "Employment Practices Wrongful Act," which was defined in the policy as including wrongful dismissal. The policy stated in part that "[t]he Insureds shall, as a condition precedent to their rights under this Policy, give the Insurer notice in writing of any Claim . . . ." The policy was effective as to all claims made between April 15, 2006 and April 1, 2007.

The Lexington policy was an "umbrella" policy which generally covered liability for

2

compensatory damages for personal injuries, including defamation, to the extent that such liability exceeded the applicable limits of certain other underlying policies covering Thomas. The limits of the various other policies were set forth in a "Schedule of Underlying Insurance" attached as an endorsement to the policy; however, the Great American policy was not listed in the schedule. The Lexington policy provided that, in the event of a covered claim for which there was no applicable primary insurance, Lexington would assume the duty to defend Thomas as the primary insurer. The Lexington policy, which was effective as to "occurrences" between April 1, 2006 and April 1, 2007, contained the following condition entitled "Notice of Occurrence, Claim, or Suit":

> A. The first Named Insured [Thomas] shall immediately notify us of any occurrence which may reasonably be expected to result in a claim against this policy. The first Named Insured will notify us on the assumption that an insured is liable and that an insured is liable for any amount claimed. . . .
>
> B.
> 1. The first Named Insured [Thomas] shall immediately notify us in writing of any claim, alone or in combination with any other claims, to which this policy applies which may exceed 25% of the applicable amount set forth in the Schedule of Underlying Insurance. The first Named Insured will notify us on the assumption that an insured is liable and that an insured is liable for any amount(s) claimed.
>
> . . . .
>
> 3. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense other than for first aid, without our consent.

Both of Thomas's insurance claims were denied on the basis that Thomas had failed to timely provide notice of a potential claim. Thomas then filed the underlying suit against Lexington and Great American for breach of contract and violations of the Texas

3

Insurance Code arising from the denials.[1]  Thomas also sued Acordia, alleging that it had breached a contract to provide insurance brokerage services to Thomas.  Thomas alleged in particular that Acordia breached the contract by:  (1) failing to notify Thomas that the Great American insurance policy was a claims-made policy[2]; (2) failing to timely deliver copies of all insurance policies to Thomas; and (3) failing to instruct Thomas as to the notice requirements of the Great American policy.  Thomas further asserted that Acordia was negligent for failing to notify Thomas of the material terms of all of its insurance policies.  The lawsuit also named Aon Risk Services Southwest, Inc. ("Aon"), which had replaced Acordia as Thomas's insurance broker of record, as a defendant.

Lexington, Acordia, and Thomas each filed motions for summary judgment.  Lexington's motion argued that it was entitled to judgment as a matter of law because it did not receive notice of Thomas's claim until six days after the arbitration award.  It further argued that any notice Thomas may have given to Aon was insufficient to comply with the policy's notice requirement because Aon was merely Thomas's broker.  Finally, Lexington argued that Thomas has no evidence of actual damages and cannot, as a matter of law, recover on any extra-contractual claims.[3]  Acordia alleged in its summary judgment

---

[1] Thomas alleged that Lexington violated the insurance code by:  (1) misrepresenting a material fact or policy provision relating to the coverage at issue; (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which its liability has become reasonably clear; and (3) refusing to pay a claim without conducting a reasonable investigation with respect to the claim.  *See* TEX. INS. CODE ANN. § 541.060(a)(1), (a)(2)(A), (7) (West, Westlaw through 2013 3d C.S.).

[2] A "claims-made" policy is a policy that only covers those claims first asserted during the policy period.  *Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 762 n.1 (Tex. 2013) (Boyd, J., concurring).  It differs from an "occurrence" policy, such as the Lexington policy, which covers only claims arising out of occurrences happening within the policy period, regardless of when the claim is made.  *See id.*

[3] The Lexington policy also contained an endorsement entitled "Employment-Related Practices Exclusion" which stated in relevant part:

In consideration of the premium charged, it is understood and agreed that the Insurer shall have no obligation to defend or indemnify with respect to any claim alleging or asserting in

4

motion that it was entitled to judgment as a matter of law because its contract to provide insurance brokerage services to Thomas terminated on December 1, 2006, prior to Morris's injury.[4]  Acordia argued further that it had no common law or statutory duty to explain any policy terms to Thomas and that, even if it had a duty to explain policy terms, (1) Acordia provided Thomas with a summary of the policies at issue, and (2) Thomas cannot show that any breach of that duty caused it to suffer harm because Thomas relied on Aon for all of its claims reporting once Aon became its broker of record.[5]  Thomas's summary judgment motion argued that it gave timely notice to Lexington and that, in any event, notice is not a condition precedent to coverage under that policy.

The trial court granted the summary judgment motions filed by Lexington and Acordia, denied the motion filed by Thomas,[6] and ordered that Thomas take nothing by way of its claims against both appellees.[7]  This appeal followed.

---

any respect loss, injury, or damage (including consequential bodily injury) in connection with Wrongful Termination of the Insured's employees and/or Discrimination involving the Insured's employees and/or Sexual Harassment of the Insured's employees.

However, Lexington did not cite this exclusion as grounds for summary judgment and so we may not affirm on those grounds.  *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993) ("[A] summary judgment cannot be affirmed on grounds not expressly set out in the motion or response.").

[4] In support of this contention, Acordia attached to its motion a letter signed by Michael Squillace, Thomas's Director of Loss Prevention and Risk Management, dated December 4, 2006, which stated in relevant part:

This is to advise that effective Wednesday, December 1, 2006, we have appointed [Aon] as the exclusive Broker/Agent of Record for [Thomas] with respect to its Property, Flood, Workers Compensation, Auto, General Liability, Umbrella Liability, Crime/Employee Dishonesty, Employment Practices Liability insurance programs. . . .  This appointment rescinds all previous appointments and the authorization contained herein shall remain in full force and effect until cancelled in writing by us.

[5] Thomas's summary judgment motion did not address its claims against Acordia, because Acordia's summary judgment motion had already been granted at the time Thomas filed its motion.

[6] Thomas does not contend on appeal that the trial court erred in denying its motion for summary judgment.

[7] The final judgment granted a motion filed by Thomas to dismiss its claims against Great American

## II. Discussion

### A.      Standard of Review and Applicable Law

We review summary judgments de novo. *Neely v. Wilson*, 418 S.W.3d 52, 59 (Tex. 2013); *Nalle Plastics Family L.P. v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 199 (Tex. App.—Corpus Christi 2013, pet. denied). In doing so, we review the evidence "in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

A motion for summary judgment may be brought on no-evidence or traditional grounds. *See* TEX. R. CIV. P. 166a(c), (i). The party moving for summary judgment bears the burden of proof. *Neely*, 418 S.W.3d at 59. Though the burden varies for traditional and no-evidence motions, all parties here brought forth summary judgment evidence; therefore, the differing burdens are immaterial and the ultimate issue is whether a fact issue exists. *See id.*; *Buck v. Palmer*, 381 S.W.3d 525, 527 n.2 (Tex. 2012). A fact issue exists if there is more than a scintilla of probative evidence. *Neely*, 418 S.W.3d at 59. Evidence is more than a scintilla if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 228 (Tex. 2011). Evidence is less than a scintilla is if it is "so weak as to do no more than create a mere surmise or suspicion that the fact exists." *Regal Fin. Co. v. Tex Star Motors, Inc.*, 355 S.W.3d 595, 603 (Tex. 2010).

---

and Aon with prejudice. Those entities are not parties to this appeal.

6

We will affirm a summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 157 (Tex. 2004).

## B. Lexington

Thomas argues by its first issue that the trial court erred in granting summary judgment to Lexington. In particular, Thomas contends that (1) Lexington did not conclusively establish that Thomas failed to comply with the policy's notice provision; (2) fact issues exist as to whether Lexington was prejudiced; and (3) summary judgment on Thomas's extra-contractual claims was improper.

### 1. Breach of Contract

We first address Thomas's contract claim against Lexington. To recover for breach of contract, a plaintiff must prove that: (1) there is a valid, enforceable contract between the parties; (2) the plaintiff performed as required under the contract; (3) the defendant breached the contract; and (4) the defendant's breach proximately caused the plaintiff's injury. *Tex. S. Rentals, Inc. v. Gomez*, 267 S.W.3d 228, 242 (Tex. App.—Corpus Christi 2008, no pet.).

In its contract claim, Thomas argued that Lexington breached a contractual duty to defend Thomas in Morris's lawsuit once Thomas's claim under the Great American policy was denied. In its summary judgment motion, Lexington argued that it was absolved of its responsibility to defend or indemnify Thomas for its arbitration and litigation costs because Thomas did not provide notice of its claim until six days after the arbitration award was issued.

7

The Lexington policy stated that coverage is "subject to the limits of liability, exclusions, conditions and other terms of this policy." Condition 4.B of the policy required Thomas to "immediately" notify Lexington of any claim to which the policy applies "which may exceed 25% of the applicable amount set forth in the Schedule of Underlying Insurance."[8] "Claim" is defined in the policy as "a written demand upon the Insured for compensatory damages or services," including "the service of suit or institution of arbitration proceedings against the Insured," but not including "reports of accidents, acts, errors, occurrences, offenses or omissions which may give rise to a claim under this policy."

We agree with Lexington that Thomas was required but failed to comply with the notice requirements. In particular, Morris's 2008 arbitration demand constituted a "claim" as defined by the policy. Moreover, because the Great American policy—which covered liability for wrongful termination—was not listed in the Schedule of Underlying Insurance, it was apparent that Morris's claim "may exceed 25% of the applicable amount set forth" in that schedule.[9] Condition 4.B of the policy therefore required Thomas to "immediately" notify Lexington of Morris's claim. Thomas failed to do so.

---

[8] Condition 4.A of the policy required Thomas to "immediately" notify Lexington of any "occurrence which may reasonably be expected to result in a claim" against the policy. Thomas argues by its third issue that Condition 4.A is ambiguous and that, therefore, Lexington could not have based its denial of the claim on Thomas's failure to comply with that provision. In light of our conclusion herein that Thomas was required to report under Condition 4.B of the policy, we need not address this issue. *See* TEX. R. APP. P. 47.1.

[9] The Schedule of Underlying Insurance listed eight policies, comprising four "Employers' Liability" policies, two "Commercial Auto Liability" policies, and two "Commercial General Liability" policies. Each of the listed policies had a $1,000,000 per occurrence policy limit. Accordingly, even if we were to assume that all eight listed underlying policies covered Morris's claim against Thomas, the coverage would be limited to $8,000,000. Morris's arbitration demand sought $2.75 million, which is more than 25% of $8,000,000. Further, the policy stated that "[Thomas] will notify us on the assumption that an insured is liable and that an insured is liable for any amount(s) claimed." Therefore, Thomas was required to report Morris's arbitration demand under Condition 4.B of the policy.

8

This is not the end of our inquiry, however, because an insured's failure to notify the insurer of an occurrence does not absolve the insurer from coverage unless the lack of notice prejudices the insurer.[10]  *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 174 (Tex. 1995); *Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 & n.3 (Tex. 1993); *Blanton v. Vesta Lloyds Ins. Co.*, 185 S.W.3d 607, 611 (Tex. App.—Dallas 2006, no pet.); *see Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692–93 (Tex. 1994) ("A fundamental principle of contract law is that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform.  In determining the materiality of a breach, courts will consider, among other things, the extent to which the non-breaching party will be deprived of the benefit that it could have reasonably anticipated from full performance.").  The purpose of the timely notice requirement is "to enable an insurer to investigate the circumstances of an accident while the matter is fresh in the minds of the witness[es] so that it may adequately prepare to adjust or defend any claims that may be asserted against persons covered by its policy."  *Blanton*, 185 S.W.3d at 611–12 (citing *Employers Cas. Co. v. Glens Falls Ins. Co.*, 484 S.W.2d 570, 575 (Tex. 1972)).  When an insurer must prove it was prejudiced by the insured's failure to comply with notice provisions, "the recognized purposes of the notice requirements form the boundaries of the insurer's argument that it was prejudiced; a showing of prejudice generally requires a showing that one of the

---

[10] Lexington argues on appeal that, "when an umbrella policy provides drop-down coverage, notice is an essential part of the bargained-for exchange" and that it therefore did not need to show that it was prejudiced by Thomas's late notice.  However, because Lexington did not make that argument in its summary judgment motion, we may not affirm on those grounds.  *See Stiles*, 867 S.W.2d at 26.

recognized purposes has been impaired." *Id.* at 612 (citing 13 COUCH ON INSURANCE § 186:14 (3d ed. 2005)).

We conclude that Lexington met its summary judgment burden to show that it was prejudiced. Thomas notified Lexington of Morris's arbitration claim only after the arbitration award was issued, and once issued, arbitration awards are "given the same effect as the judgment of a court of last resort." *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 95 n.53 (Tex. 2011). Notice that comes after judgment defeats all of the recognized purposes of the notice requirements, because it renders the insurer unable to investigate the claim, defend the claim, or negotiate in an attempt to settle the claim. *See Blanton*, 185 S.W.3d at 611–12 (citing *Employers Cas. Co.*, 484 S.W.2d at 575).

Thomas contends that a fact issue existed as to prejudice because Lexington did not have an "absolute right to settle" claims under the language of the policy. We disagree. Section II.C of the policy, which applies to claims that are covered by underlying insurance policies, states:

> we [Lexington] shall not be called upon to assume charge of the investigation, settlement or defense of any claims made or suit brought or proceedings instituted against the Insured, but shall have the right and be given the opportunity to be associated in the defense and trial of any such claims, suits or proceedings relative to any occurrence which, in our opinion, may create liability for us under the terms of this policy.

Under this provision, Lexington did not have an absolute right to settle claims but it did have the right "to be associated in the defense and trial of any such claims." Lexington also notes that Section II.A of the policy, which applies to "claims resulting from occurrences not covered by underlying insurance, due to exhaustion of any aggregate limits by reason of losses paid thereunder," provides Lexington with an explicit right to investigate, negotiate, and settle claims "as may be deemed expedient by us."

10

Regardless of whether Section II.A or Section II.C applied, Thomas's late notice deprived Lexington of a valuable right. *See Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 166 (Tex. 1993) (holding that insured's failure to provide notice prejudiced insurer as a matter of law in part because "[h]ad [the insurer] known of the suit, it might have chosen to answer for [the insured] and litigate the merits of the underlying suit"); *cf. Hernandez*, 875 S.W.2d at 693 (noting that, when late notice deprives an insurer of a right that "has no value," the insurer is not prejudiced). We therefore conclude that there is no issue of material fact as to whether Lexington was prejudiced by Thomas's late notice. Summary judgment on the contract claims against Lexington was proper.

### 2. Extra-Contractual Claims

Thomas argues that summary judgment on its insurance code claims against Lexington was improper because (1) Lexington's grounds for judgment on those claims were "premised on the absence of insurance coverage" and (2) there are fact issues as to whether Lexington was excused from performing under the policy due to Thomas's late notice. We have already held that summary judgment was proper on the contract claims. And, Thomas did not allege that it suffered any injury from Lexington's alleged insurance code violations other than the loss of benefits under the policy. *See United Servs. Auto. Ass'n v. Gordon*, 103 S.W.3d 436, 442 (Tex. App.—San Antonio 2002, no pet.) (noting that, generally, "[a]n insured is not entitled to recover extra-contractual damages unless the complained of actions or omissions cause injury independent of the injury resulting from a wrongful denial of policy benefits"). Moreover, even if Lexington had complied with all of the insurance code provisions that Thomas alleged were violated, it would still be entitled to deny Thomas's claim because, as we have held, it was prejudiced by Thomas's

11

late notice. *Cf. USAA Tex. Lloyd's Co. v. Menchaca*, No. 13-13-00046-CV, 2014 WL 3804602, at *9 (Tex. App.—Corpus Christi July 31, 2014, no. pet. h.) (mem. op.) (noting that, under the "unique circumstances" present in that case, the insurer did not breach the policy but policy benefits were nevertheless the correct measure of damages caused by the insurer's statutory violations, so the general rule pronounced in *Gordon* did not apply). Summary judgment was therefore proper on Thomas's extra-contractual claims.

We overrule Thomas's first issue.

## C. Acordia

By its second issue on appeal, Thomas contends that the trial court erred in granting summary judgment to Acordia on Thomas's claims for breach of contract and negligence.

### 1. Breach of Contract

As noted, Thomas's breach of contract claim alleged that Acordia: (1) failed to notify Thomas that the Great American policy was a claims-made policy; (2) failed to timely deliver copies of all insurance policies to Thomas; and (3) failed to instruct Thomas as to the notice requirements of the Great American policy.

In support of its summary judgment motion, Acordia attached, among other things, a Client Service Agreement executed by Acordia and Thomas dated April 1, 2006. Under the agreement, Acordia was to provide "insurance brokerage services," which was defined to include "review[ing] policies," "provid[ing] insurance summary," and "educat[ing Thomas] employees as needed." The agreement also stated in relevant part:

> This Agreement shall commence on the Effective Date hereof [April 1, 2006] and shall terminate on 1 April 2007. In the event of termination, Acordia will assist [Thomas] in arranging a smooth transition process. However, Acordia's obligation and the obligation of its affiliates to provide services to

[Thomas] will cease upon the effective date of termination, unless otherwise agreed in writing.

Notwithstanding the term of this Agreement, either party shall have the right to terminate this Agreement upon 90 days prior written notice. In the event of termination by [Thomas] prior to expiration, Acordia's annual compensation will be deemed earned according to the following schedule: 50% at inception; 75% after 6 months; 100% after nine months.

Also included in Acordia's summary judgment evidence was a "Summary of Insurance" prepared by Acordia for Thomas dated July 25, 2006. The section of the summary describing Thomas's employment practices liability coverage stated, in bold print at the top of the first page, that the Great American policy "is a Claims-Made Policy." The following disclaimer was set forth in capitals and bold print at the bottom of each page of the summary: "This summary is for descriptive purposes only. Consult your policy for specific details on coverages."[11] The agreement does not explicitly require Acordia to provide copies of insurance policies to Thomas.

In response to Acordia's summary judgment motion and on appeal, Thomas urges that there is a fact issue as to whether Acordia's alleged breaches occurred prior to December 1, 2006, when Aon replaced Acordia as Thomas's broker of record. Thomas contends that, even though Morris's injury occurred after that date, the breaches as specifically alleged occurred before that date. Thomas also asserted that Acordia had an obligation to deliver copies of policies to Thomas under provisions of the agreement which stated that Acordia was to "follow up with insurance carriers for timely issuance of policies

---

[11] Acordia states on appeal that the "Summary of Insurance" was produced by Thomas in discovery. In any event, there appears to be no dispute that Acordia initially provided the summary to Thomas as required by the contract.

13

and endorsements" and "following placement, deliver evidences of insurance prior to the expiration of [Thomas]'s current policies."

First, with respect to the assertion that Acordia failed to notify Thomas that the Great American policy was a claims-made policy, the summary produced by Acordia establishes otherwise—it stated that the policy was a claims-made policy in bold type on each page. Second, Acordia established through the Client Service Agreement that it had no contractual obligation to deliver copies of insurance policies to Thomas within any specific time.[12] Thomas did not produce a fact issue as to these specific claims. Therefore, summary judgment on these claims was proper. *See* TEX. R. CIV. P. 166a(c).

However, with respect to the claim that Acordia failed to instruct Thomas of the applicable notice requirements of the Great American policy, we find that Acordia did not establish its entitlement to judgment as a matter of law. The Client Service Agreement required Acordia to "educate [Thomas] employees as needed" regarding the applicable insurance policies. But Thomas produced deposition testimony by both its Director of Loss Prevention and Risk Management and its General Counsel stating that, though copies of the insurance policies were available, they did not read them. The Thomas executives further stated that they relied on Aon for all of its claim reporting services after Aon became broker of record.[13] Acordia argues that this testimony established that Thomas was not proximately harmed by any failure by Acordia to advise Thomas

---

[12] Thomas concedes that Acordia provided copies of all applicable policies. It merely claims that this was not done in a timely manner.

[13] Acordia objected to parts of the deposition testimony as lacking personal knowledge. The trial court sustained the objections and Thomas does not contest the ruling on appeal. However, the portions objected to by Acordia do not include the executives' statements set forth above. Accordingly, those statements are properly part of the summary judgment record.

14

employees about the policies' notice requirements. We disagree. Acordia was contractually obligated to "educate [Thomas] employees as needed" and, even if copies of all policies were eventually provided to Thomas,[14] that does not in and of itself establish that there was no breach of this provision. In any event, it was reasonably foreseeable at the time Acordia allegedly failed to advise Thomas of the notice requirements that such failure may result in Thomas failing to timely file a claim with Great American. *See Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013) ("Proximate cause has two components: (1) foreseeability and (2) cause-in-fact."); *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 478 (Tex. 1995) ("Foreseeability . . . requires that a person of ordinary intelligence should have anticipated the danger created by a negligent act or omission."); *Boren v. Texoma Med. Ctr., Inc.*, 258 S.W.3d 224, 230 (Tex. App.—Dallas 2008, no pet.) ("Foreseeability is not measured by hindsight, but instead by what the actor knew or should have known at the time of the alleged negligence."); *see also Timberwalk Apartments Partners, Inc. v. Cain*, 972 S.W.2d 749, 756, 757 (Tex. 1998) ("Foreseeability requires only that the general danger, not the exact sequence of events that produced the harm, be foreseeable."). The fact that Acordia was replaced by Aon as Thomas's broker of record almost one month prior to Morris's injury does not negate Thomas's contention that Acordia's failure to advise it of policy terms prior to December 1, 2006 was a "substantial factor" in Thomas's failure to timely file its claim. *See Rodriguez-Escobar*, 392 S.W.3d at 113 ("For a negligent act or omission to have been a cause-in-fact of the harm, the act or omission must have been a substantial factor in bringing about the harm,

---

[14] We note that the Thomas executives did not state, at their depositions, when Acordia provided copies of the insurance policies.

15

and absent the act or omission . . . the harm would not have occurred."). Finally, we agree with Thomas that the language "This is a Claims-Made Policy," which appeared in the insurance summary provided by Acordia, did not "educate" Thomas employees "as needed" because it did not set forth the notice requirements contained in the Great American policy.

Because Acordia failed to demonstrate its entitlement to judgment as a matter of law on Thomas's claim that it failed to "educate [Thomas] employees as needed," summary judgment was improper on this claim. *See* TEX. R. CIV. P. 166a(c).

## 2. Negligence

To establish negligence, a party must establish a duty, breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). As to its negligence claims, Thomas argues that there are fact issues as to whether Acordia breached its obligations (1) to educate Thomas's employees and (2) to deliver insurance policies to Thomas.

We find that Acordia established its entitlement to judgment as a matter of law and that Thomas has not raised a fact issue as to these claims. The Texas Supreme Court has held that the acts of parties to a contract "may breach duties in tort or contract alone or simultaneously in both. The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone." *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986); *see Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494–95 (Tex. 1991). This is known generally as the economic loss rule. *Sharyland Water Supply Corp.*

16

*v. City of Alton*, 354 S.W.3d 407, 415 (Tex. 2011).[15]  Here, the nature of Thomas's injury is economic loss—i.e., the payment it was ordered to make to Morris—and that loss was directly related to the subject matter of the contract at issue.  Acordia's duties to educate Thomas's employees as to policy terms and to deliver copies of policies arose, if at all, under the Client Service Agreement.  Therefore, tort damages are unavailable to Thomas. *See DeLanney*, 809 S.W.2d 493, 495 & n.2 (holding that economic loss rule precluded tort recovery where duty "arose solely" from contract and noting that "there is no tort liability for nonfeasance, i.e., for failing to do what one has promised to do in the absence of a duty to act apart from the promise made").  Summary judgment was proper on Thomas's negligence claims against Acordia.  *See* Tex. R. Civ. P. 166a(c).

Thomas's second issue is sustained in part and overruled in part.

### III. Conclusion

We affirm the trial court's judgment in part and reverse it in part as stated herein, and we remand the cause for further proceedings consistent with this opinion.

DORI CONTRERAS GARZA,
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
11th day of September, 2014.

---

[15] Courts have allowed recovery of economic damages—even absent physical injury or property damage—in suits for negligent misrepresentation, legal or accounting malpractice, breach of fiduciary duty, fraud, fraudulent inducement, tortious interference with contract, nuisance, wrongful death claims related to loss of support from the decedent, business disparagement, and some statutory causes of action. *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418–19 (Tex. 2011).  Thomas does not bring any such claims against Acordia.