Paul BOREN, Individually and as Legal Representative of the Estates of Laura Thomas and Andre Boren and on Behalf of all Wrongful Death Beneficiaries and Heirs to the Estates of Laura Thomas and Andre Boren and Bryant Hughes, as Legal Representative of the Estate of Leyha Hughes and on Behalf of all Wrongful Death Beneficiaries and Heirs to the Estate of Leyha Hughes, Appellants,

v.

TEXOMA MEDICAL CENTER, INC., Appellee.

No. 05–07–00593–CV.

Court of Appeals of Texas, Dallas.

April 30, 2008.

Jeffrey H. Rasansky, Robert Edward Wolf, Rasansky Law Firm, Dallas, TX, for appellants.

Cathy F. Bailey, Steed Flagg, LLP, Michelle E. Robberson, Cooper & Scully, P.C., Dallas, TX, for Texoma Medical Center, Inc.

Before Chief Justice THOMAS and Justices BRIDGES and FITZGERALD.

## OPINION

THOMAS, Chief Justice.

Paul Boren (Paul), individually and as legal representative of the Estates of Laura Thomas (Laura) and Andre Boren (Andre B.) and on behalf of all wrongful death beneficiaries and heirs to the Estates of Laura and Andre B., and Bryant Hughes (Bryant) as legal representative of the Estate of Leyha Hughes (Leyha) and on behalf of all wrongful death beneficiaries and heirs to the Estate of Leyha appeal the summary judgment in favor of Texoma Medical Center, Inc. (Texoma). In two issues, Paul and Bryant complain that there are material issues of fact regarding duty and proximate cause precluding the granting of the summary judgment. We affirm the trial court's judgment.

## Background

At approximately 7:00 a.m. on March 26, 2004, Andre Thomas (Andre T.) presented to the Texoma emergency room with a self-inflicted knife wound to his chest, determined to be superficial by chest x-ray. An emergency room nurse noted depression as Andre T.'s chief complaint. Emergency room physician Dr. William Bowen then interviewed and examined Andre T. and found Andre T. to be depressed and psychotic. Dr. Bowen noted Andre T.'s chief complaints were suicidal thoughts, hallucinations, suicide attempt, and self-injury. Dr. Bowen's assessment was Andre T. was depressed, paranoid, and suicidal with suicidal ideation, and his clinical impression was Andre T. was stable but had major depression and psychosis and attempted suicide.

Dr. Bowen referred Andre T. to Texoma's mental health department for evaluation and possible hospitalization. After interviewing Andre T., a counselor prepared an admission screening form, noting Andre T. had cut his chest, appeared psychotic, and was suicidal. The counselor assessed Andre T. as depressed, delusional, suicidal, and having a religious preoccupation. The counselor concurred with Dr. Bowen that hospitalization was appropriate for Andre T. Andre T. refused hospitalization at Texoma Behavioral Center on a voluntary basis. Dr. Bowen completed an application for an emergency detention order for a temporary hospitalization.[1] On the pre-printed application, Dr. Bowen signed the following, including Dr. Bowen's handwritten entries shown in italics:

I have reason to believe and do believe that *Andre Thomas* (name of person to be detained) is mentally ill and that unless the person is immediately restrained there is an imminent substantial risk of harm to the person or others, said risk of harm being: (describe and specify the harm that probably will occur) *Andre has expressed suicidal ideation to several staff in the ER.*

My beliefs are based on the following specific recent behavior, overt acts, attempts, or threats: *He cut on his chest with a knife this morning.*

Dr. Bowen also signed a Physician's Certificate of Medical Examination for Mental Illness. On the pre-printed form, the following includes Dr. Bowen's handwritten entries shown in italics:

That I am of the opinion that the Patient is mentally ill, and that as a result of that illness the Patient is ($X$) likely to cause serious harm to self or others, or (——) both self and others, or ($X$) will, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and will continue to experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. . . .

That I am further of the opinion that the Patient presents a substantial risk of serious harm to self or others if not immediately restrained, the detailed basis for this opinion being: *Unable to contract for safety, not on any psych. meds., not under a physician's care.*

The counselor obtained a judge's signature on the emergency detention order and warrant for immediate apprehension.

---

1. Under the health and safety code, a person may file a written application to a magistrate for the emergency detention of another person. TEX. HEALTH & SAFETY CODE ANN. § 573.012(a) (Vernon Supp.2007). (Even though the statute was amended in 2007, it did not substantively change. For convenience we cite to the current version of the statute.) If the judge or magistrate finds reasonable cause to believe the person evidences mental illness and poses a substantial and imminent risk of harm to himself or to others, the magistrate shall grant the application and issue a warrant for the person's immediate apprehension and transportation to a mental health facility for a preliminary examination. TEX. HEALTH & SAFETY CODE ANN. §§ 573.012(b), (d), (e) (Vernon Supp.2007). This warrant serves as an application for the person's detention in the facility for preliminary examination. TEX. HEALTH & SAFETY CODE ANN. § § 573.012(f), 573.021(b) (Vernon Supp. 2007). *See Shike v. State*, 961 S.W.2d 344, 346 (Tex.App.–Houston [1st Dist.] 1997, pet. ref'd).

In 2004, the statute allowed temporary detention up to 24 hours. The statute was amended to expand the time of temporary detention to 48 hours. *See* Act of May 17, 2001, 77th Leg., R.S., ch. 623, § 1, 2001 Tex. Gen. Laws 1182, 1182, amended by Act of May 10, 2007, 80th Leg., R.S., ch. 202, § 1, 2007 Tex. Gen. Laws 287, 287 (current version at TEX. HEALTH & SAFETY CODE ANN. § 573.021(b) (Vernon Supp.2007)).

However, upon return to Texoma around 9:30 a.m. with the signed emergency detention order, it was determined that Andre T. had left Texoma without advising anyone. Texoma staff contacted the Denison police department and reported Andre T. missing.

Around 7:00 p.m. that evening, Andre T. went to the apartment of his ex-wife Laura. Laura shared the apartment with their son Andre B., her boyfriend Bryant, and her daughter with Bryant, Leyha. Andre T. listened to audiotapes with Bryant until almost midnight, after which Bryant drove Andre T. home.

On his way to work the next morning at approximately 6:00 to 7:00 a.m., Bryant saw Andre T. walking in the direction of Laura's apartment. Bryant phoned Laura's father, Paul, who went to the apartment. There he discovered Andre T. had killed Laura, Andre B., and Leyha with a knife.

Paul and Bryant filed this health care liability cause of action against Texoma. They also asserted gross negligence and sought exemplary damages. Texoma moved for summary judgment on the grounds it owed no duty to non-patients when treating Andre T., and its alleged negligence was too remote to be a proximate cause of the deaths of Laura, Andre B. and Leyha or of Paul and Bryant's claimed injuries. The order granting summary judgment does not specify the grounds on which it was granted.

## Standard of Review

The standard for reviewing a traditional summary judgment is well established. We review a summary judgment de novo to determine whether a party has established its right to summary judgment as a matter of law. *See Dallas Cent. Appraisal Dist. v. Cunningham*, 161 S.W.3d 293, 295 (Tex.App.–Dallas 2005, no pet.). A party moving for a traditional summary judgment must show no material fact issue exists and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Cunningham*, 161 S.W.3d at 295. When reviewing a summary judgment, we must examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *City of Keller v. Wilson*, 168 S.W.3d 802, 824–25 (Tex. 2005).

■■■ To prevail on a medical negligence cause of action, a plaintiff must prove a duty by the hospital to act according to the applicable standard of care, a breach of the applicable standard of care, an injury, and a causal connection between the breach of care and the injury. *Clements v. Conard*, 21 S.W.3d 514, 522 (Tex. App.–Amarillo 2000, pet. denied).[2] Absent a legal duty, there is no liability. *See Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex.1999). The existence of a legal duty is a question of law for the court to decide from the particular facts surrounding the occurrence in question. *Military Highway Water Supply Corp. v. Morin*, 156 S.W.3d 569, 572 (Tex.2005). Because the existence of a legal duty is a pure question of law, we apply a de novo standard of review. *Loram Maint. of Way, Inc. v. Ianni*, 141 S.W.3d 722, 727 (Tex.App.–El

---

**2.** To establish gross negligence, a plaintiff must also prove by clear and convincing evidence that: (i) from the actor's standpoint, the act or omissions complained of involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (ii) the actor had actual subjective awareness of the risk involved but nevertheless proceeded in conscious indifference of the rights and safety or welfare of others. TEX. CIV. PRAC. & REM.CODE ANN. § 41.001(11) (Vernon Supp.2007); *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 785 (Tex.2001).

Paso 2004), *rev'd on other grounds,* 210 S.W.3d 593 (Tex.2006) (citing *El Paso Natural Gas Co. v. Minco Oil & Gas, Inc.,* 8 S.W.3d 309, 312 (Tex.1999)).

## Discussion

In their first amended petition, Paul and Bryant list particulars by which they allege Texoma failed to exercise the care of an ordinary prudent hospital in the treatment of Andre T., but each allegation is based on an underlying duty to non-patient third parties. It is undisputed no physician-patient relationship existed between Texoma and Paul, Bryant, Laura, Andre B., or Leyha. The question is whether Texoma had a duty to non-patient third parties based on its care and treatment of Andre T.

"Generally, there is no duty to control the conduct of others." *Tex. Home Mgmt., Inc. v. Peavy,* 89 S.W.3d 30, 34 (Tex.2002). On numerous occasions, the Texas Supreme Court has declined to create or recognize a duty from a healthcare provider to a third party non-patient arising out of the healthcare provider's treatment of a patient. *See Thapar v. Zezulka,* 994 S.W.2d 635, 637–40 (Tex.1999) (mental health professional had no duty to mother for misdiagnosis of child, negligent treatment of child, or failure to warn of child's threats); *Van Horn v. Chambers,* 970 S.W.2d 542, 544–46 (Tex.1998) (hospital owed no duty to hospital employees who were injured or died attempting to subdue patient); *Praesel v. Johnson,* 967 S.W.2d 391, 396–98 (Tex.1998) (clinic and physicians had no duty to family of driver killed in motor vehicle accident resulting from epileptic seizure by patient treated prior to collision); *Edinburg Hosp. Auth. v. Trevino,* 941 S.W.2d 76, 79–81 (Tex.1997) (hospital owed no duty to third party to provide competent medical care to wife or unborn child); *Krishnan v. Sepulveda,* 916 S.W.2d 478, 482 (Tex.1995) (physician owed no duty to husband for negligent diagnosis of wife); *Cathey v. Booth,* 900 S.W.2d 339, 342 (Tex.1995) (neither hospital nor physician owed duty to father of stillborn child for treatment of mother); *Bird v. W.C.W.,* 868 S.W.2d 767, 768–70 (Tex.1994) (psychologist owed no professional duty to a third party for alleged misdiagnosis of a patient). However, a special relationship between the actor and the third person could impose a duty on the actor to control the third person's conduct. *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). Such a relationship may exist between a parent and child, master and servant, employer and employee, and independent contractor and contractee under special circumstances. *Id.*

Relying on *Texas Home Management v. Peavy,* 89 S.W.3d 30 (Tex.2002), Paul and Bryant argue Texoma had a duty to control Andre T.[3] In *Peavy,* Texas Home

---

3. In support of their health care liability claim, Paul and Bryant rely on the affidavit of Lisa Clayton, M.D. Dr. Clayton's affidavit includes conclusory statements that Texoma owed a duty to control Andre T. and owed a duty to the decedents based on an alleged special relationship with Andre T. The trial judge indicated the summary judgment was granted as a matter of law and he did not consider the affidavit of Dr. Clayton. On appeal, Paul and Bryant have not asserted any error in the trial court's failure to consider Dr. Clayton's affidavit, but Paul and Bryant rely on Dr. Clayton's affidavit as evidence in support of their claim of duty and state that it was before the court.

Because the question of duty is a question of law for the court, an expert cannot opine regarding the existence of a duty. *See Drennan v. Cmty. Health Inv. Corp.,* 905 S.W.2d 811, 824 (Tex.App.–Amarillo 1995, writ denied). Expert testimony is insufficient to create a duty where none exists at law. *See Nat'l Convenience Stores, Inc. v. Matherne,* 987 S.W.2d 145, 149 (Tex.App.–Houston [14th Dist.] 1999, no pet.). Thus, Dr. Clayton's stated opinions about the existence or extent

Management (THM), a medical care facility for the mentally impaired, entered into a provider agreement with the State, under which TMH agreed to provide for the care, training, and treatment of Anthony Tyrone Dixon (Dixon), a state-ordered patient of the facility, and further agreed to follow all applicable state and federal regulations and standards, including continually monitoring and reporting on Dixon's progress to the State. *Id.* at 35.

THM had knowlege of Dixon's violent behavior and there was "ample evidence" to suggest that the intermediate facility was not sufficient to control Dixon. *Id.* However, "THM continued acceptance of Dixon in its program and continued accepting payments from the State rather than recommending that Dixon be placed in a more appropriate facility." *Id.* The summary judgment evidence documented Dixon was involved in nineteen assaults, seven other instances of criminal conduct, and nine incidents of verbal threats while he resided at the facility. *Id.* at 37. While at school, Dixon was involved in seven separate assaults, resulting in penalties and referral to law enforcement. *Id.* at 33. In one incident, another student required stitches after Dixon cut him with a piece of glass. *Id.* During his visits to Houston to see his mother, Dixon engaged in more extreme criminal conduct, including burglary of a habitation, aggravated assault, shoplifting, and high-speed vehicular chase. *Id.* Dixon's behavior prompted his mother to request Dixon's home visits to Houston be discontinued for at least some period. *Id.* Two months after that re-

quest, Dixon shot and killed a young woman at a convenience store in Houston and stole her vehicle. *Id.*

The court held that a special relationship existed between THM and Dixon that imposed a duty on THM to control Dixon's behavior, because the regulations and standards incorporated in the contract which THM voluntarily contracted to follow gave THM the right to control Dixon. *Id.* at 36. In imposing the duty in *Peavy,* the court focused on the amount of control exercised by the facility over the resident and found THM's control over Dixon was "greater than the control ordinarily exercised by a physician over a patient." *Id.* at 35.

▮ Here, although Texoma attempted to obtain an emergency detention order, Andre T. eloped from the hospital before the order was signed by the justice of the peace. Andre T. had not been admitted to Texoma at the time he left the hospital and he was not committed to a State mental health care facility. Texoma had no contract with the State that required supervisory control over Andre T. Without the signed and executed detention order and warrant, Texoma had no lawful right to restrain, detain, or control Andre T. Accordingly, *Peavy* does not control and based on this record, Texoma had no special relationship with Andre T. to justify extending a duty to Texoma to control Andre T.

▮ Paul and Bryant also argue Texoma had a duty because it was foreseeable Andre T. would harm his family.[4]

of Texoma's purported duty or duties do not create an issue of fact precluding summary judgment.

**4.** In support of their assertion of a legal duty, Paul and Bryant rely on the dissenting opinion in *Kerrville State Hosp. v. Clark,* 923 S.W.2d 582, 586–89 (Tex.1996). The patient

in *Clark* was under court-ordered, out-patient commitment that required a social worker to take responsibility for the patient's care and to prepare a treatment program for the patient. *Id.* at 588. This treatment program recognized the patient's lengthy history of aggressive, assaultive, and potentially very dangerous behaviors. *Id.* There, the mental pa-

Before imposing a duty of care, the risk of harm must be foreseeable. *Id.* For the risk of harm to be foreseeable, the injury must be of such a general character as might reasonably have been anticipated, and the injured party should be so situated with relation to the wrongful act that injury to him or one similarly situated might reasonably have been foreseen. *Mellon Mortgage Co. v. Holder*, 5 S.W.3d 654, 655 (Tex.1999) (plurality opinion) (citing *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 551 (Tex.1985)). Foreseeability is not measured by hindsight, but instead by what the actor knew or should have known at the time of the alleged negligence. *Timberwalk Apts. v. Cain*, 972 S.W.2d 749, 757 (Tex.1998). In other words, "[t]here is neither a legal nor a moral obligation to guard against that which cannot be foreseen in the light of common or ordinary experience...." *J.R. Beadel v. De La Garza*, 690 S.W.2d 71, 73 (Tex.App.–Dallas 1985, writ ref'd n.r.e.) (quoting *Hadaway v. Lone Star Gas Co.*, 355 S.W.2d 590, 592 (Tex.Civ.App.–Fort Worth 1962, no writ)).

Paul and Bryant contend Andre T.'s murderous acts were foreseeable. Paul and Bryant assert Texoma knew or should have known Andre T. was a threat to others, thus creating a duty to protect the decedents from an allegedly known dangerous patient. They assert danger to others was the action Texoma was attempting to avoid by seeking an emergency admission.

Andre T. presented to Texoma with a self-inflicted wound and suicidal ideations. Both the application for emergency detention and the Physician's Certificate reference Andre T.'s danger to himself or others, rather than himself and others. The record contains no evidence that when at Texoma, Andre T. exhibited behavior dangerous to others or expressed any homicidal ideation, any threat to injure others, or any specific threat to injure his family or his wife's family. The evidence negates foreseeability as a matter of law.

Because Texoma negated the threshold element of duty in this medical negligence cause, the trial judge did not err in granting Texoma summary judgment. We overrule Paul and Byrant's first issue.

Due to our disposition of Paul and Bryant's first issue, we need not consider their second issue: whether Texoma's alleged medical negligence or gross negligence proximately caused the alleged injuries. *See* TEX.R.APP. P. 47.1.

We affirm the trial court's summary judgment.

---

tient killed his wife while he was undergoing outpatient treatment by the hospital. *Id.* at 586.

In *Clark*, the majority decided the case in favor of the State hospital based on sovereign immunity. The dissenting Justices would have found a duty to third parties on the hospital's part "because KSH had control over [the patient] and knew or reasonably should have known that he posed a serious danger to a readily identifiable person or class of persons." *Id.* at 588. *Clark* involved a known and readily identifiable danger to a person or class of persons, the patient's wife whom he had threatened in the past. Even if the dissenting Justices were correct, Paul and Bryant's reliance on the dissent in *Clark* is misplaced, and the case before us is distinguishable.