**REVERSE and REMAND; and Opinion Filed June 29, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00501-CV

### STACI BOWSER, Appellant
### V.
### CRAIG RANCH EMERGENCY HOSPITAL, L.L.C., Appellee

**On Appeal from the 401st Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 401-00158-2012**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Lang-Miers

Staci Bowser appeals from the trial court's order granting summary judgment in favor of Craig Ranch Emergency Hospital, L.L.C. in this healthcare liability lawsuit. We conclude that Bowser raised a genuine issue of material fact on the challenged elements of her claims. We reverse the trial court's order and remand for further proceedings.

### BACKGROUND

In June 2011, Bowser went to Emerus 24-Hour Emergency Room in McKinney, Texas, complaining of knee pain. A doctor diagnosed her with a knee strain and ordered a 60 milligram Toradol injection. Nurse Tillie Smith gave Bowser an injection of 60 milligrams of Toradol in her left arm. Bowser immediately felt pain in her arm that radiated up and down from the injection site. The next day she still had pain, and also had swelling, tingling, spasms, and weakness in her arm. She went to a Care Now Clinic and then back to Emerus. Two days after

she received the injection, Bowser saw an orthopaedic specialist who concluded that Bowser had "[d]eltoid tendonitis and spasm post injection." Two weeks later, the orthopaedic specialist saw Bowser again and diagnosed her with "Complex Regional Pain Syndrome post Toradol injection."[1] The orthopaedic specialist referred Bowser to a specialist in pain management who confirmed that Bowser suffered from CRPS caused by the Toradol injection. After trying a variety of treatments, including the implantation of a permanent spinal cord stimulator, Bowser was unable to obtain any long-term relief.

Bowser sued the Hospital[2] alleging both vicarious and direct liability theories of recovery. She alleged that Nurse Smith gave the injection in the wrong location for the deltoid muscle; that the volume of medication in the injection, 60 milligrams of Toradol in 2 milliliters of fluid, exceeded the standard of care for an injection into the deltoid muscle; and that Nurse Smith should have given the injection in a muscle that posed a lower risk for nerve injury such as the ventrogluteal. Bowser also alleged that the Hospital was directly liable for its failure to have adequate policies and procedures in place for the administration of intramuscular injections and the supervision of its nurses and for its failure to properly train and supervise its employees about the proper administration of a 60 milligram Toradol injection. She alleged that as a result of the negligently administered injection, she suffered "intractable pain" that has prevented her from returning to her work as a licensed practical nurse.

The Hospital filed a combined no-evidence and traditional motion for summary judgment. In the no-evidence motion with regard to the direct liability claims, the Hospital alleged that Bowser had no evidence the Hospital "breached the standard of care with regard to

---

[1] CRPS is "a constellation of symptoms and signs" including "burning pain, hypersensitivity, intolerance to touch, limited range of motion at the [affected area], limited functional use of the [affected area], and vasomotor changes[.]" Treatment therapies include "medications commonly used to treat neuropathic pain, opioid analgesic medications, stellate ganglion blockades, and a permanent spinal cord stimulator."

[2] The record does not indicate the relationship between Craig Ranch Emergency Hospital, L.L.C. and Emerus 24-Hour Emergency Room. However, appellee does not complain. Bowser also sued, and then nonsuited, CR Emergency Services, P.A.

policies and procedures or training and supervision of nurses or employees" and no evidence that any "alleged breach was a proximate cause of [her] claimed injuries." The Hospital also alleged that Bowser had no evidence it had a duty or breached a duty "to promulgate policies regarding the supervision of nurses or regarding the administration of intramuscular injections, including a 60 mg. Toradol injection." And the Hospital alleged that Bowser had no evidence the Hospital "had a duty to train and supervise its employees in how to provide a 60 mg. Toradol injection, or that it breached such duty."[3] In the traditional motion, the Hospital alleged that its summary-judgment evidence conclusively negated the foreseeability element of proximate cause on Bowser's direct and vicarious liability claims.

Bowser responded to the motion and attached the following summary-judgment evidence: (1) an expert affidavit and reports prepared by Steven H. Horowitz, M.D., board certified in Neurology and Electrodiagnostic Medicine with considerable experience in the treatment and research of CRPS, who testified that the Toradol injection was the proximate cause of Bowser's injury; (2) an expert affidavit and reports prepared by Carolynn Cassutt, RN, CRNI, CLNC, VA-BC, credentialed in the specialty of infusion therapy and board certified in vascular access, who gave opinions about the standard of care for intramuscular injections and alleged inadequacy of the Hospital's policies and procedures for the administration of intramuscular injections; (3) excerpts from Bowser's deposition; (4) excerpts from Nurse Smith's deposition; (5) excerpts from the deposition of the Hospital's nurse expert; and (6) Bowser's medical records.

The Hospital objected to Dr. Horowitz's and Nurse Cassutt's affidavits arguing that they stated new opinions that were untimely disclosed under rule 193.6, conclusory, an unfair

---

[3] In its brief to this Court, the Hospital stated that it challenged "two essential elements" in its no-evidence motion: breach and proximate cause. Those are the elements we analyze on appeal.

surprise, and shams because they conflicted with the experts' prior deposition testimony. The trial court did not rule on these objections, and the Hospital concedes on appeal that it did not get a ruling on its objections to the affidavits. An objection that an affidavit is a sham because it contradicts the affiant's earlier deposition testimony is an objection about the form of the affidavit that requires a ruling to be preserved for review. *Hogan v. J. Higgins Trucking, Inc.*, 197 S.W.3d 879, 882 (Tex. App.—Dallas 2006, no pet.). And an objection that an affidavit was untimely disclosed under rule 193.6 is also an objection as to form. *See Fort Brown Villas III Condominium Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881–82 (Tex. 2009) (per curiam) (objection that opinion not timely disclosed under rule of civil procedure 193.6 requires ruling from trial court). Consequently, those objections are not preserved for our review. *Hogan*, 197 S.W.3d at 883 (objecting party must get written ruling on objections to summary-judgment evidence to preserve issue for appeal). However, to the extent the Hospital contends that the affidavits were conclusory, we will address those objections in our discussion of the merits of the summary judgment. *See Brown v. Brown*, 145 S.W.3d 745, 751 (Tex. App.—Dallas 2004, pet. denied) (objection that summary-judgment affidavit is conclusory may be reviewed on appeal even though no written ruling overruling the objection).

The trial court granted the Hospital's motion for summary judgment without stating a basis. In two issues on appeal, Bowser argues that the trial court erred by granting the Hospital's (1) traditional and (2) no-evidence motions for summary judgment.

STANDARD OF REVIEW

The function of summary judgment is not to deprive a litigant of the right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *See Gulbenkian v. Penn*, 252 S.W.2d 929, 931 (Tex. 1952). A summary judgment provides a method of summarily terminating a case when it clearly appears that only a

question of law is involved and no genuine issue of fact remains. *See Gaines v. Hamman*, 358 S.W.2d 557, 563 (Tex. 1962).

"[A] no-evidence summary judgment is essentially a pretrial directed verdict, [and] we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *Espalin v. Children's Med. Ctr.*, 27 S.W.3d 675, 683 (Tex. App.—Dallas 2000, no pet.). To avoid a no-evidence summary judgment, the nonmovant must produce more than a scintilla of probative evidence raising a genuine issue of material fact on each challenged element of its claim. TEX. R. CIV. P. 166a(i); *Espalin*, 27 S.W.3d at 683.

We review the grant of traditional summary judgment de novo. *Merriman v. XTO Energy, Inc*., 407 S.W.3d 244, 248 (Tex. 2013). When a party moves for traditional summary judgment, the movant must prove that there is no genuine issue of material fact and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *State v. Ninety Thousand Two Hundred Thirty-Five Dollars and No Cents in United States Currency ($90,235)*, 390 S.W.3d 289, 292 (Tex. 2013). If the defendant establishes its right to summary judgment as a matter of law, the burden shifts to the plaintiff to present evidence raising a genuine issue of material fact precluding summary judgment. *Espalin*, 27 S.W.3d at 682.

In our review, we must consider the entire summary-judgment record in the light most favorable to the nonmovant and indulge reasonable inferences and resolve doubts in the nonmovant's favor. *Walters v. Cleveland Reg'l Med. Ctr.*, 307 S.W.3d 292, 296 (Tex. 2010); *Yancy v. United Surgical Partners Int'l, Inc.*, 236 S.W.3d 778, 782 (Tex. 2007) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 824–25 (Tex. 2005)). More than a scintilla of evidence exists if the evidence would allow reasonable and fair-minded people to reach the verdict under review. *City of Keller*, 168 S.W.3d at 827.

When a party files both a no-evidence and a traditional motion for summary judgment, we consider the no-evidence motion first. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). And when the trial court does not specify the ground for its ruling, as here, the nonmovant must show on appeal that each independent ground alleged was insufficient to support the summary judgment. *Merriman*, 407 S.W.3d at 248; *Espalin*, 27 S.W.3d at 682.

## APPLICABLE LAW

To prevail on a healthcare liability claim, the claimant must prove the existence of a duty by the healthcare provider to act according to the applicable standard of care, a breach of the applicable standard of care, an injury, and a causal connection between the breach of care and the injury. *Boren v. Texoma Med. Ctr., Inc.*, 258 S.W.3d 224, 227 (Tex. App.—Dallas 2008, no pet.).

The two elements of proximate cause are cause-in-fact and foreseeability. *IHS Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004). "Cause in fact" means "the act or omission was a substantial factor in bringing about the injuries, and without it, the harm would not have occurred." *Id*. at 799. "'Foreseeability' means that the actor, as a person of ordinary intelligence, should have anticipated the dangers that his negligent act created for others." *Travis v. City of Mesquite*, 830 S.W.2d 94, 98 (Tex. 1992). "Foreseeability does not require that a person anticipate the precise manner in which injury will occur once he has created a dangerous situation through his negligence." *Id*. "Foreseeability is not measured by hindsight, but instead by what the actor knew or should have known at the time of the alleged negligence." *Boren*, 258 S.W.3d at 230.

"Causation is established in medical malpractice cases through evidence of a 'reasonable medical probability' or 'reasonable probability' that the injuries were caused by the defendant's negligence; in other words, the plaintiff must present evidence 'that it is "more likely than not"

that the ultimate harm or condition resulted from such negligence.'" *Patterson v. Ortiz*, 412 S.W.3d 833, 836 (Tex. App.—Dallas 2013, no pet.) (quoting *Jelinek v. Casas*, 328 S.W.3d 526, 532–33 (Tex. 2010)). "These elements cannot be satisfied by mere conjecture, guess, or speculation." *IHS Cedars*, 143 S.W.3d at 798–99. And in a healthcare liability claim when expert causation testimony is required (by other than a dentist or a podiatrist), the expert must be a physician and otherwise qualified to render an opinion on the causal relationship. TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (West 2011).

A hospital may be directly liable for injuries arising from the negligent performance of a duty owed directly to a patient. *Reed v. Granbury Hosp. Corp.*, 117 S.W.3d 404, 409 (Tex. App.—Fort Worth 2003, no pet.). A hospital owes a duty to its patients "to use reasonable care in formulating the policies and procedures that govern the hospital's medical staff and nonphysician personnel," *id.*, and a duty to hire, supervise, and train competent employees, *see Doege v. Sid Peterson Mem'l Hosp.*, No. 04-04-00570-CV, 2005 WL 1521193, at *7 (Tex. App.—San Antonio June 29, 2005, pet. denied) (mem. op.). A hospital also may be vicariously liable to a patient for the negligence of an employee acting within the scope of her employment. *See Bapt. Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998). "The standard of care for a hospital is what an ordinary prudent hospital would do under the same or similar circumstances." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001).

## DISCUSSION

### The Hospital's No-Evidence Motion for Summary Judgment

In issue two, Bowser argues that the trial court erred by granting the Hospital's no-evidence motion for summary judgment.

## A. Breach of the Standard of Care

The Hospital moved for no-evidence summary judgment on Bowser's direct liability claims arguing that Bowser had no evidence the Hospital breached the standard of care regarding the formulation of policies and procedures for intramuscular injections and training and supervising its nurses in the administration of intramuscular injections and, specifically, a 60 milligram Toradol injection. We disagree.

Bowser's expert nurse, Cassutt, testified by affidavit that the Hospital's policy on intramuscular injections "relied upon an outdated source and inaccurately stated the standard of care for injections into the deltoid." Nurse Cassutt testified that the Hospital's policy on intramuscular injections in the deltoid was dated December 1, 2008, and was based on the fifth edition of a standard nursing textbook that did not state a maximum volume for the injection. She also testified that the seventh edition of that textbook had been published at the time the Hospital issued its policy and at the time Nurse Smith gave Bowser the injection. That edition stated that the standard of care was to limit an injection in the deltoid muscle to 0.5 to 1 milliliter, not the 5-milliliter maximum as stated in the Hospital's policy. Additionally, the evidence showed that the actual volume injected into Bowser's arm, 2 milliliters, still exceeded the recommended maximum for that injection site by then-current standard nursing texts.

The Hospital objected to specific paragraphs of Nurse Cassutt's affidavit as conclusory.[4] An affidavit is conclusory if the affiant does not explain the basis for her conclusions and link the conclusions to the facts of the case. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 53 (Tex. 2002) (per curiam) (citing *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999)). But Nurse Cassutt explained that the Hospital used an outdated source for its policy on intramuscular injections and that the outdated source did not specify a maximum volume for an injection into

---

[4] As we earlier concluded, the Hospital did not get a ruling on its other objections and they are not preserved for our review.

the deltoid muscle. She cited standard nursing texts describing the standard of care for injections into the deltoid muscle at the time Bowser received her injection and concluded that the Hospital's policy breached the standard of care. Consequently, Nurse Cassutt's affidavit is not conclusory because she provided underlying facts to support her conclusion. *See id.*

We conclude that Bowser's summary-judgment evidence constitutes more than a scintilla on the element of breach of the standard of care with regard to the promulgation of policies and procedures for the administration of intramuscular injections. And a reasonable inference from the Hospital's alleged failure to promulgate policies and procedures regarding the standard of care for intramuscular injections is that the Hospital also failed to train and supervise its nurses in the proper administration of intramuscular injections in the deltoid muscle. *See Walters*, 307 S.W.3d at 296; *Yancy*, 236 S.W.3d at 782. As a result, Bowser's summary-judgment evidence raised a genuine issue of material fact on the element of breach of the standard of care on her direct liability claims.

## B.    The Cause-In-Fact Element of Proximate Cause

The Hospital also moved for no-evidence summary judgment on Bowser's direct liability claims arguing that Bowser had no evidence that its alleged failure to promulgate policies and procedures and train and supervise its nurses was a cause-in-fact of Bowser's injury. Again, we disagree.

In Dr. Horowitz's reports attached to his affidavit, he stated that a nerve injury can occur as a consequence of "a direct needle stick into the nerve," from "a drug injection directly into or involving the nerve," and from "an acute inflammatory response following the injection of medication into the tissues . . . surrounding the nerve." He said CRPS could be directly linked to an improper intramuscular injection "with the proper medical history." Then he described Bowser's medical history and explained why he thought the injury was a result of either a direct

–9–

needle stick or the volume of medication injected into Bowser's arm. He said Bowser had no medical history to indicate any other cause of her symptoms, she reported "a shooting pain up and down her left arm" immediately after the injection, and she complained "of pain in the left arm and shoulder, weakness in the shoulder, loss of motion in the shoulder, and tingling in the fingers of her left hand." He said these symptoms were "some of the hallmarks of CRPS."

Nurse Cassutt testified that the standard of care required Nurse Smith to give the injection in the ventrogluteal muscle, not the deltoid muscle. Nurse Cassutt reviewed Nurse Smith's testimony about how she determined the proper location for an injection in the deltoid muscle and concluded that Nurse Smith's technique was a breach of the standard of care. And after looking at a picture of the injection site on Bowser's arm, Nurse Smith testified that she could not have given the injection at that site because it was "the wrong location."

Bowser's summary-judgment evidence showed that the Hospital's policy authorized five times the maximum volume of medication according to the then-current standard of care, and that the actual amount of medication Bowser received was twice that amount. And Bowser's summary-judgment evidence showed that her symptoms were "some of the hallmarks of CRPS" and nothing in her medical history, except the injection, explained the symptoms.

A reasonable inference from Bowser's summary-judgment evidence is that the Hospital's allegedly inadequate policy and failure to properly train and supervise its nurses as to the proper standard of care for intramuscular injections was a substantial factor in causing Bowser's injury. *See Walters*, 307 S.W.3d at 296; *Yancy*, 236 S.W.3d at 782. We conclude that Bowser's summary-judgment evidence raised a genuine issue of material fact on the element of cause-in-fact on her direct liability claims.

–10–

### C.     The Foreseeability Element of Proximate Cause

The Hospital also moved for no-evidence summary judgment on the element of foreseeability on all of Bowser's claims.  It contended that Bowser's summary-judgment evidence did not constitute a scintilla of evidence that Nurse Smith should have foreseen a nerve injury to Bowser as a result of the injection.  The Hospital also objected to Dr. Horowitz's affidavit as conclusory because he testified that the injection "proximately caused" Bowser's injury "without explaining how the injury was foreseeable to [Nurse] Smith."

Dr. Horowitz's affidavit stated that he has experience with "patients with peripheral nerve diseases and nerve injuries," has seen and treated "hundreds of patients with complex regional pain syndrome (CRPS)," and has published "a number of articles on the subject of CRPS."  He testified that "[i]njection injuries to peripheral nerves (such as the lateral brachial cutaneous nerve) are not uncommon, both in my experience and as documented in the medical literature."  He testified that "[a] nerve injury is an expected and foreseeable result of a needle stick to the nerve during an IM injection of a bolus of medication into or surrounding the nerve."

In one of his reports, Dr. Horowitz stated that the volume of Toradol given to Bowser "was far in excess of the proper bolus of medications recommended for injection into a deltoid muscle . . . and therefore a violation of the standard of care."  He testified that "[n]erve trauma is the proximate cause of CRPS Type II and [Bowser's] signs and symptoms satisfy [the] criteria" for that injury.  He stated that "[i]njection injuries of peripheral nerves are, unfortunately, not that uncommon and are well-described in the medical literature."  And he said "while most limb trauma or injury will not trigger CRPS, *CRPS is a known complication* that may result from such trauma or injury.  This can also be said for an [intramuscular] injection."  (Emphasis added).

Although Dr. Horowitz did not specifically testify that CRPS was a foreseeable risk of the injection of 60 milligrams of Toradol into the deltoid, he was not required to do so.  Texas

–11–

law does not require that the actor foresee the specific injury. *See Travis*, 830 S.W.2d at 98; *see also Adeyemi v. Guerrero*, 329 S.W.3d 241, 246 (Tex. App.—Dallas 2010, no pet.) (physician cited no authority for contention that "expert report must opine on whether the specific injuries sustained by the claimant could have been foreseen by the defendant physician"). Instead, "[a]ll that is required is that the injury be of such a general character as might reasonably have been anticipated and that the injured party be so situated with relation to the wrongful act that injury might reasonably have been foreseen." *Brown v. Edwards Transfer Co.*, 764 S.W.2d 220, 224 (Tex. 1988); *see also Boren*, 258 S.W.3d at 230 (same); *Hall v. Huff*, 957 S.W.2d 90, 96 (Tex. App.—Texarkana 1997, pet. denied) (same).

Nurse Cassutt testified that "standard nursing texts" warn of nerve damage "associated with all common IM sites except the ventrogluteal." She testified that a nurse is required "to consider the volume of the injectable, the medication to be given, the technique of the injection, the site selection, and the equipment to be used" when selecting a site for an intramuscular injection. She cited nursing textbooks stating that "the deltoid muscle is to be avoided for large volume[s]" of medication because of the potential for, among other risks, nerve injury to "the axillary, radial, brachial, and ulnar nerves and the brachial artery [that] lie within the upper arm under the triceps and along the humerus."

The Hospital argues that we may not consider these nursing texts because a nurse is not qualified to opine on causation and Dr. Horowitz did not state he relied on them. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (requiring expert testimony by physician to show causal relationship). But the Hospital does not cite any authority to support its argument that we may not rely on the nursing texts, and those nursing texts explain that the standard of care for choosing an injection site involves an assessment of the risk of injury. *See Mellon Mortg. Co. v. Holder*, 5 S.W.3d 654, 655–57 (Tex. 1999) (plurality op.) (determining whether injury was

–12–

foreseeable is part of duty analysis).  Additionally, because this is an appeal from summary judgment, we examine the entire record and indulge reasonable inferences and resolve doubts in the nonmovant's favor.  *Walters*, 307 S.W.3d at 296; *Yancy*, 236 S.W.3d at 782.

When we review Dr. Horowitz's entire affidavit and attached reports, along with the standard nursing texts, a reasonable inference from Dr. Horowitz's affidavit is that an ordinary intelligent nurse under the same or similar circumstances as Nurse Smith would have foreseen a nerve injury as a possible risk of an intramuscular injection of 2 milliliters of fluid into the deltoid.  *See Walters*, 307 S.W.3d at 296; *Yancy*, 236 S.W.3d at 782–83.  And this is supported by the Hospital's own nurse expert who agreed that giving an intramuscular injection using an improper technique presents a risk of harm to a nerve.  We conclude that Bowser raised a genuine issue of material fact on the element of foreseeability on all of her claims, and the trial court erred by granting a no-evidence summary judgment on that basis.  We sustain issue two.

### The Hospital's Traditional Motion for Summary Judgment

In issue one, Bowser argues that the trial court erred by granting the Hospital's traditional motion for summary judgment on the element of foreseeability.  The Hospital contended that Dr. Horowitz's deposition testimony conclusively negated the element of foreseeability as a matter of law.  But we have concluded that Bowser's summary-judgment evidence raised a genuine issue of material fact on this element.  Consequently, the trial court erred by granting the Hospital's traditional motion for summary judgment on the element of foreseeability.  We sustain issue one.

## CONCLUSION

We conclude that the trial court erred by granting summary judgment in favor of the Hospital. We reverse the trial court's summary-judgment order and remand to the trial court for further proceedings.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

140501F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

STACI BOWSER, Appellant

No. 05-14-00501-CV       V.

CRAIG RANCH EMERGENCY
HOSPITAL, L.L.C., Appellee

On Appeal from the 401st Judicial District
Court, Collin County, Texas
Trial Court Cause No. 401-00158-2012.
Opinion delivered by Justice Lang-Miers,
Justices Francis and Whitehill participating.

In accordance with this Court's opinion of this date, the April 14, 2014 order of the trial court granting appellee's motion for no-evidence and traditional summary judgment is **REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that appellant Staci Bowser recover her costs of this appeal from appellee Craig Ranch Emergency Hospital, L.L.C.

Judgment entered this 29th day of June, 2015.